**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AZELL MALONE,** **Plaintiff** | : | |
| **v.** | : | **C.A. No. 07-65-T** |
| **LOCKHEED MARTIN CORPORATION and CARL SUPANCIC,** **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**SUPPORTING MOTION FOR SANCTIONS**

The Plaintiff in the above-entitled matter respectfully submits this Memorandum of Law in Support of his Motion for Sanctions for the Defendants' interference with the deposition testimony of a witness called by the Plaintiff.

## I. Introduction

This action was brought by the Plaintiff Azell Malone against Defendants Lockheed Martin Corporation (as his employer) and Carl Supancic (as his supervisor), alleging that he was treated unfairly by his employer and his supervisor because of his race (African-American) and, furthermore, that he was targeted for retaliation after forwarding a report of illegal and improper activity of other employees that had been made to him by one of his direct reports. In the course of conducting discovery in this matter, the Plaintiff sought to take the deposition testimony of the person who had made the report to him of the illegal and improper activities of other employees. During the deposition the witness, despite stating that he had not hired Defendants' attorney, admitted that he was afraid to provide testimony after being instructed by Defendants' attorney to not respond to certain questions pursuant to an asserted attorney-client privilege. The

Plaintiff now moves this Court to impose sanctions on the Defendants and/or Defendants' attorney for their actions in interfering with the witness testimony.

## II. Relevant Factual Background

On or about January 18, 2007, the Plaintiff, Azell "Al" Malone initiated suit in Newport (R.I.) Superior Court seeking redress for violations of state and federal anti-discrimination laws on account of his asserted disparate treatment by the Defendants, Lockheed Martin Corporation, (the company for whom he works) and Carl Supancic (the person to whom he reported at that time).[1] In addition, the Plaintiff asserts that he suffered retaliation in violation of the R.I. Whistleblowers' Protection Act for reporting the alleged illegal and improper activities of certain Lockheed Martin employees. Thereafter, on Defendants' Motion, this matter was removed to the United States District Court for the District of Rhode Island on or about February 23, 2007.

In pursuit of his discrimination and whistleblower claims, the Plaintiff has undertaken a course of discovery, including the taking of depositions.[2] To that end, the Plaintiff sought to depose two Lockheed Martin employees who he believed possessed information germane to the present action: Richard J. Goulart and Keith Cobb.[3] Prior to the date of the depositions, the Plaintiff's attorney, in an effort to minimize litigation expenses and delay, and in a further effort to avoid having the deponents served with subpoenas at their place of employment, inquired through Defendants' attorney whether Defendants would be willing to provide the witnesses (who are employees of Defendant Lockheed Martin) without the need for service of subpoenas.

[1] A copy of the Complaint is attached hereto as Exhibit A.

[2] It is worth noting that in August, 2007, Defendant Lockheed Martin assigned the Plaintiff to work in Wisconsin, causing a serious disruption in the Plaintiff's ability to assist his attorney in the preparation of his case. After endeavoring to obtain an assent from Defendants to extend the discovery deadline for an additional thirty days to accommodate this disruption, and being refused, the Plaintiff has filed a separate motion to extend the discovery deadline which is presently pending before this court. As of this writing, no decision on that motion has been rendered.

[3] A copy of the Notices of Deposition are attached hereto as Exhibit B.

Defendants' attorney agreed to this request and the depositions were scheduled for October 24, 2007.[4]

Mr. Goulart's testimony in this matter would be particularly important since it was he who had made the initial report to the Plaintiff regarding the illegal activities of the other Lockheed Martin employees and, based on the information provided by Mr. Goulart, the Plaintiff then made a report to Defendant Supancic, spurring the alleged retaliation.[5] The report made by the Plaintiff clearly indicates that Mr. Goulart was the individual who reported these matters to the Plaintiff. The Plaintiff, for his part, asserts in his Complaint, that the retaliation he suffered (by being removed from his position and reassigned to a lesser position) was tied, at least in part, to his reporting of the information communicated to him by Mr. Goulart. [Compl. ¶¶18-44].

On October 24, 2007, the deposition of Mr. Goulart commenced. However, shortly after the deposition began, Mr. Goulart, in responding to a routine query by the Plaintiff's attorney into whether he had known about the case prior to deposition and whether he had discussed the matter with anyone, indicated that the day preceding the deposition (October 23, 2007) he had met with Keith Cobb, the other deponent, and Defendants' attorney to discuss the case. [Goulart Dep. at 7][6] At that point Defendants' attorney instructed Mr. Goulart to refrain from discussing anything they had talked about at that meeting. *Id.* The following dialogue then occurred:

Q. Did you hire Ms. Nordstrom as your attorney?

A. No.

[4] A copy of the email correspondence confirming this discourse is attached hereto as Exhibit C.
[5] A copy of the report submitted to Defendant Supancic by the Plaintiff is attached hereto as Exhibit D.
[6] A copy of Richard J. Goulart's deposition transcript is attached hereto as Exhibit E.

[Goulart Dep. at 8] Thereupon, the Plaintiff's attorney, believing that there existed no privilege between Mr. Goulart and Defendants' attorney, queried further into how the meeting between he and Defendants' attorney arose:

Q. When did you first meet with Ms. Nordstrom?

A. Yesterday at the end of work.

Q. Okay. And where did you meet her?

A. In Middletown. Lockheed office, Main Road.

Q. Okay.

A. East Main. East Main Road.

Q. Okay. And at whose request did you meet her?

MS NORDSTROM: I'm going to object as attorney/client privilege and direct that you not answer that question.

Q. Did Ms. Nordstrom contact you directly in the request that you meet with her?

MS. NORDSTROM: I'm going to object again. Same basis.

Q. Did Ms. Nordstrom tell you how you should prepare your answers to today's deposition?

MS NORDSTROM: Object again. Same basis. I'm his counsel sitting here. You can shake your head; but –

[Goulart Dep. at 9]

After continuing the questioning regarding what Defendant Supancic may have discussed with Mr. Goulart during the meeting, it became apparent that Mr. Goulart was unsure of how he should respond to further questions. When asked about what he and Defendant Supancic discussed regarding the case, the following dialogue ensued:

Q. Did you and he discuss the facts of this case at all?

A. I'm not sure what to say on that.

Q. Just answer truthfully.

A. I plan – I didn't know I was – you know, I thought it was just come in and answer questions; and I answer 'em truthfully –

Q. Right.

A. – and go from there. I didn't know about this representation. I don't fully understand. But I understand what she's saying. I didn't know fully.

Q. Do you believe that Ms. Nordstrom represents you in a legal capacity?

A. I thought she's representing the company, Lockheed Martin. And I though it was for Mr. Supancic and that I was just a witness coming in.

Q. Are you aware that you could have had your own attorney present today?

A. No, not – no.

Q. Did Mr. Supancic tell you you had a right to have an attorney with you today?

A. No.

Q. Did Ms. Nordstrom say that to you?

A. No, sir.

Q. Okay. So let's go back.

MS. NORDSTROM: Just for the record, I'd like to state that I told him I was his attorney for today. So he understood that he was represented.

THE WITNESS: Oh, I did as far as a point with Lockheed. I didn't know this – I was being protected.

[Goulart Dep. at 10-11]

After already testifying that he had not hired Defendants' attorney to represent him, Mr. Goulart further made it clear that he did not believe he was being represented by Defendants' attorney. However it had become evident that Mr. Goulart felt, in some measure, influenced by the assertions by Defendants' attorney that she represented him and that he should refrain from responding to certain questions. This was made clear by the following testimony:

> Q. Do you believe that you're at risk for some form of retaliation if you come here and testify today?
>
> A. I did think that may be a possibility –
>
> Q. Okay.
>
> A. – you know, from maybe both parties. I don't know; but I just want to tell the truth.

[Goulart Dep. at 15-16] After further questioning, the following exchange occurred:

> Q. And as you sit here today, do you believe that Ms. Nordstrom is your attorney?
>
> A. If I – if I'm here for Lockheed and she says she's representing Lockheed, I – in my mind, I thought she was representing Carl. Because, you know, the lawsuit against him. I didn't know I was on – I thought I was just a witness comin' in from the outside.
>
> * * *
>
> A. I understand that. But I thought it was if I hired a lawyer, that somebody would be directing me. I didn't know –
>
> Q. That's correct.

A. I was being controlled. I thought I was just gonna be asked questions and answer freely.

* * *

MS. NORDSTROM: You also understand that I may direct you not to answer. It's your choice to decide to answer –

THE WITNESS: Right.

MS NORDSTROM: -- over my recommendation; but that I will be giving you those recommendations if he asks you questions that I believe are protected by attorney/client privilege.

[Goulart Dep. at 20-23] After the forgoing exchange, Mr. Goulart made it clear that he was afraid to provide any further testimony.

THE WITNESS: Because, you know, when you say nip something in the bud early –

MR. DRYWA: Yeah.

THE WITNESS: -- it was never done. I don't know if I need legal representation now. I don't know.

MR. DRYWA: Well, you certainly have that option.

THE WITNESS: I'm intimidated to say anything now. I mean –

[Goulart Dep. at 24]

Thereafter, the Plaintiff's attorney continued with the deposition so far as he was able to, limiting questions to those areas that Mr. Goulart was not reluctant to answer. Additionally, throughout the course of the deposition, Mr. Goulart indicated on several occasions that he was the original whistleblower (by reporting the alleged illegal and improper activities of the other

Lockheed Martin employees to the Plaintiff)[Goulart Dep. at 13, 20, 28, 36, 56] and that, as a result of that, he was removed from his position. [Goulart Dep. at 28, 37] When the deposition was completed, the Plaintiff's attorney stated that he would suspend the deposition pending the filing of the present Motion.

During the deposition of Mr. Cobb, which followed Mr. Goulart's deposition by approximately forty-five minutes, and in light of the tenor of Mr. Goulart's deposition, Mr. Cobb was asked whether he had discussed the case with anyone. [Cobb Dep. at 11][7] As with Mr. Goulart, Mr. Cobb referred to the previous day's meeting and, after Defendants' attorney asserted the attorney-client privilege, was asked whether Defendants' attorney was, in fact, his attorney.

Q. Is she your lawyer?

A. Yes. She is now.

Q. Did you hire her?

A. No. I did not. The company hired her for me.

Q. The company did. And when did you learn of that?

A. Yesterday.

[Cobb Dep. at 12] The Plaintiff's attorney then continued with Mr. Cobb's deposition to the extent that it did not seek any disclosure of the communications regarding the previous day's meeting.

## III. Issue

Whether the Defendants and/or their attorneys should be sanctioned for their interference with a witness prior to and during a deposition and the subsequent frustration of the witness's testimony at the deposition pursuant to Fed.R.Civ.P. 30(d)(3).

## IV. Argument

### I. THE COURT SHOULD SANCTION THE DEFENDANTS AND/OR THEIR ATTORNEYS FOR INTERFERENCE WITH THE TESTIMONY OF A WITNESS BEFORE AND DURING A DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(d)(3)

The conduct of the Defendants and their attorney in interposing an objection based on privilege and interfering with the conducting of a deposition by influencing the testimony of a witness is precisely the type of conduct addressed by Fed.R.Civ. P. 30(d), which provides,

> (1) Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).
>
> * * *
>
> (3) If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable attorney's fees incurred by any parties as a result thereof.

#### 1. Assertion of the Attorney-Client Privilege

The Defendants, through counsel, asserted numerous times during the course of Mr. Goulart's deposition that any communications that took place the day preceding the deposition between and among Mr. Goulart, Defendants' counsel, and Defendant Supancic (in the presence of Mr. Cobb) were privileged and, thereby, instructed him to refrain from responding. [Goulart Dep. at 8, 9, 11, 16, 22-23] Defendants' attorney continued to assert this privilege and instruct Mr. Goulart to refrain from responding despite the fact that Mr. Goulart made it clear that he had not hired Defendants' attorney to represent him [Goulart Dep. at 8] and indicating the he believed Defendants' attorney represented Lockheed Martin and Supancic. [Goulart Dep. at 20-23]

---

[7] A copy of the relevant portion of the deposition transcript of Keith Cobb is attached hereto as Exhibit F.

The Defendants' attorney's invocation of the attorney-client privilege to preclude the disclosure of communications between Mr. Goulart and Defendants' attorney (made while in the presence of Defendant Supancic and Mr. Cobb) in "preparation" for the deposition demonstrates a clear misapprehension of the privilege, the purpose of which is to "encourage complete disclosure of information *between counsel and client*." *Cordner v. K-H Corp.*, 1999 U.S. Dist. LEXIS 20887 at *8-9 (No. 97-01-ML, D.R.I., March 12, 1999)(citing *Upjohn Co. v. United States*, 449 U.S. 383, 390-91 (1981)(emphasis added)). "The attorney-client privilege protects communications made in confidence by a client to his attorney." *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 571 (1st Cir. 2001). The essential elements of the privilege are:

(1) the asserted holder of the privilege is or sought to become a client;
(2) the person to whom the communication was made . . . is a member of a bar of a court;
(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance on some legal proceeding, and not (d) for the purposes of committing a crime or tort; and
(4) the privilege has been (a) claimed and (b) not waived by the client.

*Cordner*, 1999 U.S. Dist. LEXIS 20887 at *9. In this case, Mr. Goulart's testimony that he had not hired Defendants' attorney to represent him and believed that she did not represent him indicates that he was not nor did he seek to become a client of Defendants' attorney. Hence, it cannot be fairly claimed that any communication between he and Defendants attorney on the eve of his deposition qualify for the privilege. The remaining components of the foregoing test are therefore mooted.

In short, Mr. Goulart was called into a meeting with Defendants' attorney, while defendant Supancic and Mr. Cobb were present, and was informed about the upcoming deposition. A rational inference is that, during the meeting, Mr. Goulart and Mr. Cobb were instructed or coached on how

to respond to certain questions that were likely to arise in the course of the deposition. Otherwise there would be no need to invoke the privilege. However, such communications are not the stuff of privilege. It has been declared that "the attorney-client privilege has such profound impact on the full disclosure of the truth that it must be construed within the limits consistent with the logic of its principle." *In re Miracle Enterprises, Inc.*, 40 B.R. 503, 506 (Bankr. D. R.I. 1984). Furthermore, the privilege is not limitless, and must be narrowly construed because it comes with substantial costs and may stand as an obstacle to the search for the truth. *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003).

In this case, the only rational reading of Mr. Goulart's testimony is that he was influenced, in fear of retaliation, to follow the orders of the attorney who represented his employer. Indeed, a diligent search of relevant case law in this jurisdiction (or any other federal jurisdiction) reveals no instance where a court has recognized an attorney–client privilege unilaterally imposed upon the client by the attorney via the use of intimidation.[8]

Furthermore, the mere fact that Mr. Goulart is an employee of Defendant Lockheed Martin does not, by extension, impute that he is a "client" of Defendants' attorney for whom the privilege can apply.[9] Although it is true that it is difficult to determine whether a corporate officer or

---

[8] Although Mr. Cobb did not indicate that he was in any manner intimidated, he did indicate that he was informed that he had legal representation. In effect, the company "assigned" its own attorney to Mr. Cobb

[9] Although Defendants' counsel cooperated in the production of Mr. Goulart and Mr. Cobb for their depositions, no such action, in and of itself, gives rise to an attorney-client relationship. Fed.R.Civ.P. 30(a) provides that,

> (1) A party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court except as provided in paragraph (2). The attendance *may* be compelled by subpoena as provided in Rule 45.

(emphasis added). There is no requirement that non-party witnesses be subpoenaed and it is certainly not uncommon to request that opposing counsel assist in the production of employees to provide deposition testimony in lieu of the service of a subpoena, typically done in the workplace and generating a degree of unpleasantness for the person on whom the subpoena is served. In other words, Defendants cannot claim that, merely because they agreed to produce two employees upon request of the Plaintiff that the employees automatically obtain the character as "clients" and can then be restrained in the providing testimony without impediment.

employee may claim an attorney-client privilege in communications with corporate counsel, the "default assumption is that the attorney only represents the corporate entity, *not the individuals* within the corporate sphere, and it's the individuals' burden to dispel that presumption." *In re Grand Jury Subpoena*, 274 F.3d at 571 (emphasis added). In order to determine whether a corporate employee can properly assert a personal claim of attorney-client privilege, a five part test must be satisfied. The employee must show (1) that he approached counsel for the purpose of seeking legal advice; (2) that when he approached counsel he made it clear he was seeking legal advice in his individual capacity rather than in his capacity as an employee of the corporation; (3) that counsel saw fit to communicate with him in his individual capacity, knowing that a possible conflict could arise; (4) that the conversations with counsel were confidential; and (5) that the substance of his conversations with counsel did not concern matters within the company or the general affairs of the company. *Id.*

Mr. Goulart made it clear that he had not hired Defendants' attorney and that he was not represented by her, thereby affirming the presumption, rather than dispelling it. Therefore, the mere fact that he is an employee of Defendant Lockheed Martin, absent his intent to seek legal representation by Defendants' counsel, does not cause the privilege to arise.

Finally, there are instances where an attorney-client relationship may arise based on the conduct of the parties, absent the consent of the prospective client and the attorney, creating what has been referred to as implied representation. *See In re Cumberland Investment Corp.*, 120 B.R. 627, 629-30 (Bankr. D. R.I. 1990). However, in such cases the scope of the attorney-client relationship will "hinge[] upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *Id*. No such implied representation can be gleaned from the facts in this matter.

In addition to the improper use of the attorney-client privilege to stifle Mr. Goulart's testimony, Defendants' attorney has also demonstrated a disregard for the applicable rules of professional conduct. The R.I.R.Prof.Cond., an analog to the American Bar Association's Model Rules of Professional Conduct, contemplates the situation that has arisen in the context of the present Motion. R.I.R.Prof.Cond. 1.13 indicates as follows:

> a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
>
> * * *
>
> (f) In dealing with an organization's . . . employees . . . a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

The foregoing makes it clear that the Defendants' attorney potentially *could* represent Mr. Goulart, so long as it was made clear to him that the company's interests are adverse to his. To be sure, Mr. Goulart, on numerous occasions during his deposition testimony, indicated that he felt he had suffered retaliation because of his report and that he was the actual whistleblower in connection with that report. Having himself alleged that he had been targeted for retaliation by the company on the same basis that the Plaintiff asserts, it is patently clear that Mr. Goulart's interests are directly adverse to the company's.[10]

---

[10] R.I. Rule Prof. Cond. 1.7 - Conflict Of Interest: Current Clients, states that,

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. []
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

The Comment to Rule 1.13 sets forth the protocol in such instances.

> [1] An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders and other constituents. Officers, directors, employees and shareholders are the constituents of the corporate organizational client . . . .
>
> [2] When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6 . . . *This does not mean, however, that constituents of an organizational client are the clients of the lawyer*. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by Rule 1.6.
>
> * * *
>
> [10] There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances *the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation*. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.
>
> [11] Whether such a warning should be given by the lawyer for the organization to any constituent individual may turn on the facts of each case.

R.I.R.Prof.Cond. 1.13 – Comment (emphasis added). The foregoing demonstrates unequivocally that Defendants' attorney, knowing that there existed a conflict (or potential conflict) between her representation of Lockheed Martin/Supancic and Mr. Goulart, should have advised Mr. Goulart that he could have obtained his own attorney. Mr. Goulart testified that he was not so advised. [Goulart Dep. at 10-11] Failure to do so was a blatant violation of Defendants' attorney's obligations.

Therefore, it was improper for the Defendants' attorney to invoke the attorney client privilege as to Mr. Goulart during his deposition testimony and to thereby instruct him not to respond to questions put forth by the Plaintiff's attorney.

**2. <u>Interference with Deposition</u>**

Having established that the attorney-client privilege was improperly interposed by Defendants' attorney during Mr. Goulart's deposition (and to a lesser extent, Mr. Cobb's deposition), the next question is whether the invocation of that privilege impeded, delayed or frustrated the "fair examination" of Mr. Goulart. Fed.R.Civ. P. 30(d)(3). Under the facts set forth herein, it is difficult to perceive of a more overt interference with the fair examination of a witness than the action that occurred during Mr. Goulart's October 24, 2007, deposition. Indeed, despite Mr. Goulart's testimony that he was not represented by Defendants attorney, Defendants' attorney continued to pressure Mr. Goulart into refraining from answering legitimate questions relating to whether he was instructed on how to respond to questions posed by the Plaintiff's attorney. Surely, an employee of an organization who, during a deposition is sitting next to his employer's attorney, and who had indicated he believed he had already suffered retaliation by the company for prior actions, would be reluctant to blatantly disregard the attorney's instructions to refuse a response to a question for fear of further retaliation. Mr. Goulart was placed in the unenviable position of deciding whether to openly tell the truth or risk further retaliation by his employer for doing so. Defendant's attorney's forceful direction to Mr. Goulart demonstrates the coercion employed:

> MS NORDSTROM: You also understand that I may direct you not to answer. It's your choice to decide to answer –
>
> THE WITNESS: Right.
>
> MS. NORDSTROM: -- over my recommendation; but I will be giving you those recommendations if he asks you questions that I believe are protected by attorney/client privilege.

[Goulart Dep. at 23] By informing Mr. Goulart that he was free to respond "over" Defendants' attorney's recommendation implies to the witness that he would effectively be refusing the directives of his employer. Shortly after the foregoing exchange, Mr. Goulart testified that he was "intimated to say anything now." [Goulart Dep. at 24] This is precisely the effect Defendants' attorney sought to achieve. By intimidating Mr. Goulart into altering his testimony—or refusing to respond altogether—Defendants' attorney unquestionable interfered with Mr. Goulart's deposition.

If such behavior is allowed to go unchecked by this court, every potential witness to be called at the trial of this matter (or in further depositions) who happens to be an employee of Lockheed Martin could be hailed into a meeting the day before giving testimony and be intimidated into providing specific and limited testimony under the guise of the attorney-client relationship. The slippery slope created by such action is self-evident.

In summary, as a result of the actions of Defendants and Defendants' attorney, the fair examination of Mr. Goulart was impeded. Therefore, sanctions are appropriate pursuant to Fed.R.Civ. P. 30(d)(3).

**WHEREFORE**, the Plaintiff respectfully prays for the following relief:

1. That Defendants be ordered to pay for the Plaintiff's attorney's time to prepare for and take the depositions of Mr. Goulart and Mr. Cobb;
2. That Defendants be ordered to pay for the Plaintiff's travel expenses to attend the deposition (the Plaintiff had been reassigned to Wisconsin in August, 2007 and was required to expend personal funds to attend the depositions);
3. That the Defendants be ordered to pay for the cost of the deposition transcripts;
4. That the Defendants be ordered to pay for the cost of the preparation of the present Motion;

5. That the Defendants be ordered to pay for the re-taking of Mr. Goulart and Mr. Cobb's depositions;
6. That the Defendants' attorney be ordered to refrain from discussing this case or potential testimony with Mr. Goulart and Mr. Cobb forthwith;
7. That the discovery deadline be extended for a reasonable amount of time to allow for the re-taking of these depositions, if it has not already been extended by prior motion.

Plaintiff
By his attorneys,
SIMS & SIMS, LLP

Dated: November 1, 2007

/s/ Michael F. Drywa, Jr.

Michael F. Drywa, Jr. (#5999)
53 Arlington Street
P.O. Box 7367
Brockton, MA 02303
(508) 588-6900
(508) 586-3320 (fax)

**CERTIFICATE OF SERVICE**

I, Michael F. Drywa, Jr., hereby certify that the within Motion was served upon the below-named counsels of record via email and first class mail at the addresses listed and that same has been electronically filed and is available for viewing and downloading from the court's ECF system.

**Tamika R. Nordstrom, Esq.**
Miller & Martin PLLC
1170 Peachtree Street NE
Suite 800
Atlanta, GA 30309
tnordstrom@millermartin.com

**Mark T. Reynolds, Esq.**
REYNOLDS, DeMARCO & BOLAND, LTD.
146 Westminster Street, Suite 400
Providence, RI 02903
mtreynolds@conversent.net

/s/
Michael F. Drywa, Jr., Esq. (#5999)
SIMS & SIMS LLP
53 Arlington Street
Brockton, MA 02303
508-588-6900