**MALONE v. LOCKHEED MARTIN CORPORATION, ET AL.**

**07-65-T**

# PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING MOTION FOR SANCTIONS

# EXHIBIT A

STATE OF RHODE ISLAND
NEWPORT, SC.

SUPERIOR COURT

AZELL MALONE,
Plaintiff

v.

LOCKHEED MARTIN CORPORATION
and CARL SUPANCIC,
Defendants

C.A. No. 07-

# COMPLAINT

## I. Introductory Statement

This is an action brought by the Plaintiff, Azell Malone, against the Defendants seeking declaratory and injunctive relief, attorney fees and litigation expenses and other equitable relief, including front pay and back pay, as well as compensatory and punitive damages to remedy the unlawful retaliation and discrimination in employment the Plaintiff has suffered on account of his race (African-American) in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2(a)(1)("Title VII"), the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.* ("FEPA"), the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.* ("RICRA"), and the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.* ("RIWPA").

## II. Parties

1. The Plaintiff, Azell Malone, is an African-American male and a resident of the Town of Portsmouth, County of Newport, State of Rhode Island.

2. Defendant Lockheed Martin Corporation ("Lockheed Martin") is a corporation duly organized and operating pursuant to the laws of the State of Maryland with its principal place of business located at 6801 Rockledge Drive, Bethesda, Maryland, and operates a

facility in the Town of Middletown, Newport County, Rhode Island, and has sufficient minimum contact with the State of Rhode Island such that it is subject to the jurisdiction of this Court.

3. Defendant Carl Supancic ("Supancic") is a resident of the State of Rhode Island with an address of 27 Saint Anna Avenue, Town of Bristol, County of Bristol, State of Rhode Island and is sued individually and in his capacity as supervisor for Lockheed Martin.

## III. Exhaustion of Administrative Remedies

4. On or about August 16, 2006, the Plaintiff filed a charge alleging race discrimination with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC").

5. On or about December 11, 2006, upon a Request by the Plaintiff that he be granted the right to sue, the EEOC issued a Notice of Right to Sue to the Plaintiff, terminating its processing of the Plaintiff's charge.

6. There is no requirement under the RICRA and the RIWPA relative to the exhaustion of administrative remedies.

## IV. Allegations Common to All Causes of Action

7. On or about March 7, 1977, the Plaintiff was hired as a Field Engineer by Sperry (Defendant Lockheed Martin's predecessor in interest) after serving in the United States Air Force as an Electronic Technician.

8. The Plaintiff held the position of Field Engineer until March 1983, at which time Defendant Lockheed Martin acquired or otherwise succeeded Sperry.

9. Upon Defendant Lockheed Martin's acquisition and/or succession of Sperry, the Plaintiff was promoted to Engineer-in-Charge as an employee of Lockheed Martin, becoming the supervisor to a staff of Field Engineers.

10. In or about late 2002/early 2003, Defendant Supancic was assigned to work as the Plaintiff's direct supervisor.

11. At or around the time that Defendant Supancic was assigned to supervise the Plaintiff, the Plaintiff had received a promotion to Field Engineering Manager.

12. Up to the time Defendant Supancic was assigned to work as the Plaintiff's direct supervisor, the Plaintiff had exhibited an outstanding record of performance and service to Defendant Lockheed Martin and had never suffered from any disciplinary action whatsoever.

13. From about 2003-2004, to the present, defendant Supancic has subjected the Plaintiff to a pattern of retaliation, harassment, and discrimination in the form of fabricated performance deficiencies and disparate working conditions.

14. At some point in 2004, the Plaintiff began to be subjected to retaliation and blatant discriminatory treatment by Defendant Supancic on account of the Plaintiff's identity as an African-American.

15. In or about late summer, 2004, Defendant Lockheed Martin was working on a government contract within the Combat Control Systems Laboratory ("CCSL") at the Naval Undersea Warfare Center in Newport, Rhode Island ("NUWC") as a subcontractor—Purvis Systems ("Purvis) was the prime contractor.

16. At or about that time, the Plaintiff learned that some of the engineers who reported to him had received special favors in the form of gifts from an employee of Purvis, Olimpio Pavao (Pavao").

17. At or about that same time, the Plaintiff also learned that the same employee of Purvis (Pavao) who was providing gifts to Lockheed Martin employees was taking scrap metal

from the facility (which belonged to the United States government), possibly selling it to a scrap company, and keeping the proceeds for himself.

18. The Plaintiff, upon learning of the activities of Pavao, informed his supervisor, Defendant Supancic, by submitting a written report of these incidents and thereafter assisted Supancic in conducting an investigation into these matters.

19. The investigation, which included interviews with a number of the Plaintiff's direct reports (all of whom were Caucasian), revealed that Pavao had in fact given gifts to the Plaintiff's charges and had also improperly taken scrap metal from the facility.

20. After Defendant Supancic completed his investigation, and despite the fact that other employees in the organization had confirmed the actions of Pavao, the Plaintiff immediately became the target of retaliation by Defendant Supancic and also began to suffer from harassment and disparate treatment by Defendants while the Caucasian employees who gave information in the investigation were not subjected to similar action.

21. On or about October 6, 2004, Defendant Supancic issued a letter to the Plaintiff that stated as follows:

> We have been unsuccessful in reaching you at your home telephone number, cell number or pager today regarding reporting to work. Consistent with these messages, you are directed to report to my office at 8:00 am Thursday, October 7th.
>
> If you are unable to do so, please contact me immediately at 401-714-2527.

22. Prior to this that time, the Plaintiff had never had any problem with his work attendance.

23. On or about October 7, 2004, Defendant Supancic issued another letter to the Plaintiff that stated as follows:

> It is imperative that you report to my office tomorrow morning, October 8, at 8:00 a.m. Failure to do so will result in disciplinary action up to an [sic] including termination of employment.

24. Prior to the Plaintiff's reporting of Pavao's activities, the Plaintiff had been an exemplary employee with Sperry and Lockheed Martin and had not a single incident of discipline of any kind.

25. On or about October 13, 2004, the Plaintiff met with Defendant Supancic at which time Defendant Supancic informed the Plaintiff that he (the Plaintiff) had developed an attendance problem and issued to the Plaintiff a memorandum which read as follows:

> You have been advised during conversations over the last several months, as well as our conversations this week, that reliable attendance is an essential function of your job. Despite being made aware of this, problems with your attendance persist. You continue to be absent from work with little or no prior notice.
>
> The requirements of your job are not being met due to your absenteeism and there is a direct impact to our customer program performance. The absence notification procedure that we have discussed several times in the past continues to be ignored. It is imperative that if you must be out of the office for any reason, you must speak to me directly for approval, at least 24 hours prior. Any further absences not approved by me in advance will lead to further disciplinary action up to and including termination of employment.

26. Prior to the issuance of the October 13, 2004, Memorandum, the Plaintiff had no prior issues regarding absenteeism and his personnel record contained no reports regarding any attendance problems.

27. Upon information and belief, no other employee under Defendant Supancic's supervision was subjected to the same notification protocol as placed upon the Plaintiff pursuant to the October 13, 2004, Memorandum.

28. Less than one week later, on October 19, 2004, Defendant Supancic presented another memorandum to the Plaintiff that seriously called into question the Plaintiff's supervisory abilities, reading in part as follows:

> You were recently debriefed on Tuesday October 12, 2004, by Sean Thompson, Human Resources, of the findings of an investigation that specifically involved your employees. The investigation determined that your lack of effective and/or active management practices contributed to the issues plaguing your employees. Specifically, lack of a clearly communicated tool process, your overall poor supervisory practices, and your own personal attendance. Your actions as a supervisor are unacceptable and have negatively impacted the overall performance of your work group as well as your own.
>
> This letter serves as a written notice that these issues are serious and require your immediate attention. I am confident that you are capable of meeting the challenge to effectively lead and perform your supervisory responsibilities for your group. I will set up a time for us to periodically review your progress. It is expected that you make marked and sustained improvements. If you are unable to make improvement, further disciplinary action may result, up to and including termination of employment.

29. Upon information ad belief no other employees who worked under Defendant Supancic's supervision who received gifts or otherwise partook in any improper behavior (all of whom were Caucasian) were subjected to any form of discipline and none were required to comply with the same or similar periodic review requirements placed on the Plaintiff pursuant to the October 19, 2004, Memorandum.

30. There is no indication in the Plaintiff's personnel record to substantiate the allegations as set forth in either the October 13, 2004, Memorandum or the October 19, 2004, Memorandum to demonstrate that he was not attending work as scheduled.

31. There was no indication in the Plaintiff's personnel record that any investigation which may have taken place was targeted at him or that the results demonstrated that the problems involving his employees and Pavao were the result of the Plaintiff's supervisory practices.

32. Shortly after the foregoing warnings were issued to the Plaintiff by Defendant Supancic, the Plaintiff's work group was "re-organized" by Defendant Supancic and the Plaintiff was stripped of his authority and the title of Engineering Manager.

33. Thereupon, the Plaintiff was informed that his job would be broken up into two positions and that he could "re-bid" on the job.

34. No other department head, all of whom were Caucasian, was placed in such a situation that required them to "re-bid" on their own jobs.

35. The Plaintiff re-applied for his prior position but was not rehired to the job. Instead, the position was given to Jim Higson (a Caucasian), who had previously been the Software Engineering Manager.

36. As a result of the foregoing reorganization, the Plaintiff was demoted to a Field Engineer and began to report to Higson.

37. After the re-organization, and despite the fact that the Plaintiff was assigned to report to Higson, Defendant Supancic continued to exert his authority over the Plaintiff in an effort to force him out of the organization, often requesting that other employees inform Defendant Supancic when the Plaintiff was five minutes late for work.

38. Upon information and belief the actions of Defendants Lockheed Martin and Supancic were designed to make the Plaintiff's work environment so intolerable that the Plaintiff would voluntarily resign or quit.

39. In or about July 6, 2005, the Plaintiff sent a memorandum to Lockheed Martin's Human Resources department which informed Human Resources that after being ordered by management to drive a co-worker to Raytheon, he returned to work and was subjected to comments of "Driving Miss Daisy" by co-workers and government technicians. The Plaintiff was offended and embarrassed by such comments.

40. The Plaintiff continues to be subjected to discriminatory and unfair treatment in his performance review, pay, and job assignments by Defendants.

41. Other similarly situated Caucasian employees are not subjected to the same treatment and restrictive working conditions as the Plaintiff.

42. Defendants retaliated against the Plaintiff for reporting to his supervisor (Defendant Supancic) a violation of state law when he learned that Pavao had been taking scrap metal from the facility.

43. Defendants unlawfully discriminated, and continue to discriminate against the Plaintiff because of his race as an African-American, resulting in a reduction in salary and other benefits attend to his job.

44. The Plaintiff has suffered, is now suffering and will continue to suffer emotional and economic injury as a result of having been subjected to retaliation and intentionally discriminated against by Defendants on the basis of his race, including but not limited to front pay, future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life.

## V. <u>Claims For Relief</u>

45. Plaintiff incorporates in each of the counts below the allegations contained in paragraphs 1-44 above.

### <u>Count One</u>
### <u>Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2(a)(1)</u>

46. The actions of Defendants, including but not limited to those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his race insofar as the Plaintiff's race was and remains a motivating factor in Defendants' discriminatory and abusive conduct toward the Plaintiff in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2(a)(1), causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Civil Rights Act.

**Count Two**
**Violation of the Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.***

47. The actions of Defendants, including but not limited to those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his race insofar as the Plaintiff's race was and remains a motivating factor in Defendants' discriminatory and abusive conduct toward the Plaintiff in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Fair Employment Practices Act.

**Count Three**
**Violation of the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1, *et seq.***

48. The actions of Defendants, including but not limited to those described herein, constitute unlawful discrimination against Plaintiff in employment on account of his race insofar as said actions resulted in the harassment and demotion of the Plaintiff, impairing the attendant salary, benefits, privileges, terms and conditions of a contractual relationship between the Plaintiff and Lockheed Martin in violation of the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the Rhode Island Civil Rights Act.

**Count Four**
**Violation of the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.***

49. The actions of Defendants, including but not limited to those described herein, constitute a violation of the Rhode Island Whistleblowers' Protection Act insofar as the Plaintiff suffered from immediate and serious retaliation after reporting the illegal activity of a co-worker to his direct supervisor.

## VI. Prayers for Relief

**WHEREFORE**, the Plaintiff prays that this Honorable Court enter judgment:

a. Declaring the acts and practices complained of herein as being in violation of The Civil Rights Act, the Rhode Island Fair Employment Practices Act, the Rhode Island Civil Rights Act, and the Rhode Island Whistleblowers' Protection Act.

b. Enjoining and permanently restraining the Defendants from violating the Civil Rights Act, Rhode Island Fair Employment Practices Act, the Rhode Island Civil Rights Act, and the Rhode Island Whistleblowers' Protection Act as they relate to the Plaintiff.

c. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect the Plaintiff's future employment opportunities.

d. Awarding the Plaintiff front pay and benefits that will adequately compensate him in the manner he would have been so compensated had he not been subjected to the unlawful discrimination by Defendants.

e. Awarding the Plaintiff compensatory damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other personal losses.

f. Awarding the Plaintiff punitive damages for the Defendants' intentional, malicious, and reckless violation of the Civil Rights Act, the Rhode Island Fair Employment Practices Act, the Rhode Island Civil Rights Act, and the Rhode Island Whistleblowers' Protection Act.

g. Awarding the Plaintiff reasonable attorneys fees, costs, and witness fees as provided by the Rhode Island Fair Employment Practices Act and the Rhode Island Civil Rights Act.

h. Granting such other and further relief as this Honorable Court deems just and proper.

## VII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## VIII. Designation of Trial Counsel

Plaintiff hereby designates Michael F. Drywa, Jr., Esquire, as trial counsel.

PLAINTIFF
By his attorneys,
SIMS & SIMS LLP

January 16, 2007

Michael F. Drywa, Jr. (#5999)
53 Arlington Street
Brockton, MA 02303
(508) 588-6900
(508) 586-3320 (fax)

**MALONE v. LOCKHEED MARTIN CORPORATION, ET AL.**

**07-65-T**

**PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING MOTION FOR SANCTIONS**

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AZELL MALONE,** **Plaintiff** <br> **v.** <br> **LOCKHEED MARTIN CORPORATION and CARL SUPANCIC,** **Defendants** | : | **C.A. No. 07-65-T** |

**NOTICE OF DEPOSITION**

TO: **Tamika R. Nordstrom, Esq.**
Miller & Martin PLLC
1170 Peachtree Street NE
Suite 800
Atlanta, GA 30309

**Mark T. Reynolds, Esq.**
REYNOLDS, DeMARCO & BOLAND, LTD.
146 Westminster Street, Suite 400
Providence, RI 02903

Pursuant to Fed. R. Civ. P. 30, the Plaintiff gives notice that at 10:00 a.m. in the forenoon on Wednesday, October 24, 2007, at the offices of *Jamison Chase, Esq., Jerry Ims, Esq., 2477 East Main Road, Portsmouth, Rhode Island 02871*, the Plaintiff by his attorney will take the deposition of RICHARD GOULART.

The deposition will be upon oral examination pursuant to Fed. R. Civ. P. 30 before a Notary Public in and for the State of Rhode Island, or before some other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

PLAINTIFF
By his attorneys,
SIM & SIMS LLP

October 16, 2007

Michael F. Drywa, Jr. (#5999)
53 Arlington Street
P.O. Box 7367
Brockton, MA 02303
(508) 588-6900
(508) 586-3320 (fax)

**AFFIDAVIT OF NOTICE**

I, Michael F. Drywa, Jr., hereby certify that I have notified the Defendants of the taking of said deposition by facsimile and by mailing a copy of the within Notice of Taking Deposition, first class mail, postage prepaid to:

**Tamika R. Nordstrom, Esq.**
Miller & Martin PLLC
1170 Peachtree Street NE
Suite 800
Atlanta, GA 30309

**Mark T. Reynolds, Esq.**
REYNOLDS, DeMARCO & BOLAND, LTD.
146 Westminster Street, Suite 400
Providence, RI 02903

Said deposition is scheduled for **Wednesday, October 24, 2007, at 10:00 a.m.** at the office of *Jamison Chase, Esq., Jerry Ims, Esq., 2477 East Main Road, Portsmouth, Rhode Island 02871*.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 16th DAY OF OCTOBER, 2007.

Michael F. Drywa, Jr., Esq. (#5999)
SIMS & SIMS LLP
53 Arlington Street
P.O. Box 7367
Brockton, MA 02303
508-588-6900

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **AZELL MALONE,** **Plaintiff** | : | |
| **v.** | : | **C.A. No. 07-65-T** |
| **LOCKHEED MARTIN CORPORATION and CARL SUPANCIC,** **Defendants** | : | |

## NOTICE OF DEPOSITION

TO: **Tamika R. Nordstrom, Esq.**
Miller & Martin PLLC
1170 Peachtree Street NE
Suite 800
Atlanta, GA 30309

**Mark T. Reynolds, Esq.**
REYNOLDS, DeMARCO & BOLAND, LTD.
146 Westminster Street, Suite 400
Providence, RI 02903

Pursuant to Fed. R. Civ. P. 30, the Plaintiff gives notice that at 12:00 p.m. in the afternoon on Wednesday, October 24, 2007, at the offices of *Jamison Chase, Esq., Jerry Ims, Esq., 2477 East Main Road, Portsmouth, Rhode Island 02871*, the Plaintiff by his attorney will take the deposition of KEITH COBB.

The deposition will be upon oral examination pursuant to Fed. R. Civ. P. 30 before a Notary Public in and for the State of Rhode Island, or before some other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

PLAINTIFF
By his attorneys,
SIM & SIMS LLP

October 16, 2007

[signature]

Michael F. Drywa, Jr. (#5999)
53 Arlington Street
P.O. Box 7367
Brockton, MA 02303
(508) 588-6900
(508) 586-3320 (fax)

**AFFIDAVIT OF NOTICE**

I, Michael F. Drywa, Jr., hereby certify that I have notified the Defendants of the taking of said deposition by facsimile and by mailing a copy of the within Notice of Taking Deposition, first class mail, postage prepaid to:

**Tamika R. Nordstrom, Esq.**
Miller & Martin PLLC
1170 Peachtree Street NE
Suite 800
Atlanta, GA 30309

**Mark T. Reynolds, Esq.**
REYNOLDS, DeMARCO & BOLAND, LTD.
146 Westminster Street, Suite 400
Providence, RI 02903

Said deposition is scheduled for **Wednesday, October 24, 2007, at 12:00 p.m.** at the office of *Jamison Chase, Esq., Jerry Ims, Esq., 2477 East Main Road, Portsmouth, Rhode Island 02871.*

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 16th DAY OF OCTOBER, 2007.

Michael F. Drywa, Jr., Esq. (#5999)
SIMS & SIMS LLP
53 Arlington Street
P.O. Box 7367
Brockton, MA 02303
508-588-6900

**MALONE v. LOCKHEED MARTIN CORPORATION, ET AL.**

**07-65-T**

**PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING MOTION FOR SANCTIONS**

# EXHIBIT C

**Michael Drywa**

**From:** Tamika Nordstrom [tnordstrom@millermartin.com]
**Sent:** Tuesday, October 02, 2007 3:06 PM
**To:** Michael Drywa
**Cc:** Deering, Dani
**Subject:** RE: Depositions - Malone v. LM

Michael:

We will defend and produce Rick Goulart and Keith Cobb for depositions. They are both committed to work on location on Oct. 17-18, however. They would be available on either Oct. 24th or 25th if either of those dates work for you.

**Tamika Nordstrom**
**Of Counsel**
**Miller & Martin PLLC**

Suite 800
1170 Peachtree Street, N.E.
Atlanta, GA 30309
Phone (404) 962-6413
Fax (404) 962-6315

MILLER & MARTIN PLLC
ATLANTA · CHATTANOOGA · NASHVILLE

**CONFIDENTIALITY NOTICE**
The information contained in this e-mail message is legally privileged and confidential, and is intended only for the use of the addressee. If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this e-mail is prohibited. If you have received this e-mail in error, please immediately notify us by reply e-mail and delete this message and any attachments. Thank you.

Please also advise us immediately if you or your employer does not consent to receipt of Internet e-mail for confidential messages of this kind.

**DISCLAIMER**
Pursuant to Circular 230 issued by the United States Treasury Department and relating to practice before the Internal Revenue Service, any comment or opinion in this communication relating to a federal tax issue is not intended to be used, and cannot be used, by a taxpayer for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer.

**From:** Michael Drywa [mailto:michael@simsandsimsllp.com]
**Sent:** Tuesday, October 02, 2007 1:36 PM
**To:** Tamika Nordstrom
**Subject:** Depositions - Malone v. LM

Tamika,

I'd like to schedule the depositions of Rick Goulart and Keith Cobb as soon as possible. First, how does Oct. 17 or 18 work for you? I expect that both depos combined should take less than 4 hours. Second, would you be willing to guarantee their presence or will it be necessary to subpoena them? Get back to me when you get a chance. Thanks.

Michael

**MALONE v. LOCKHEED MARTIN CORPORATION, ET AL.**

**07-65-T**

**PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING MOTION FOR SANCTIONS**

# EXHIBIT D

September 23, 2004

Carl,

Today I received a complaint from Richard Goulart about repeated harassment and intimidation by Joe Pires. Apparently, Rick and Joe had it out while I was picking-up lunch. When I returned Rick was visibly upset about something so I asked him if he was okay. Rick said "he and Joe had an argument and that Joe wanted to keep it on the QT from me but he's had enough. He wants some dialogue between management and Joe to make Joe respectful of others especially himself (Rick)". Rick went on to express that "Joe makes abusive and derogatory comments in his (Rick's) presence and in the presence of others. He said that Joe's criticism is unwarranted, not humorous and at times are perceived as threats For example, on more than one occasion Joe told Rick that "I don't give a f—k about you or your family" Rick said that " he told Joe that he doesn't appreciate being threatened and he was not accepting the abuse anymore". He said "Joe creates a hostile environment for him that is combative and non-professional. The tension needs to get resolved".

The more disturbing part of this complaint is Rick's allegations that Joe Pires and John Lastowski have been accepting gifts in the form of tools from a key government employee, Olimpio Pavao. The tools and tool kits are over $500.00 each. Rick found this out from Olimpio himself as he bragged about "taking care of his boys for traveling to Hawaii". Christopher Plezia's name was mentioned by Olimpio as having given him the funding to accomplish this. I asked Rick why he took so long to report this and he said that he felt intimidated before and he's finally had enough. He knew he would ostracized for reporting the questionable practices but felt that remaining silent only encouraged the improprieties to continue.

There are many problems with this questionable relationship between Olimpio and people he chooses to like. Just this week Olimpio complained to me about John Prendys using his tools. He maintained that John should have his own tools even though John Prendy's swore he had Olimpio's permission. He asked me to talk to John Prendy's about this. Speculation is this never would have been an issue if Joe Pires, John Lastowski or Allen Landel had been using the tools. These are the people he favors "this week", subject to change. Olimpio appears to buy allegiance through bribery even though all of our people know better. The favoritism he shows some over others only serves his purposes to promote dissention and dissatisfaction between the guys.

Upon hearing about the reported allegations, I called you at the earliest convenience. I've since learned that if we dig deeper we'll find more instances of tools being bought for only certain Lockheed Martin employees, even though we're all supporting the same customer and laboratory.

I'll discuss this further with you in the morning.

A.Malone