# EXHIBIT 2

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AZELL MALONE | * | Civil Action |
| -vs- | * | No. 07-65-T |
| LOCKHEED MARTIN CORPORATION and CARL SUPANCIC | * | |

APPEARANCES: Michael F. Drywa, Junior, Esquire
53 Arlington Street
Post Office Box 7367
Brockton, Massachusetts 02303;
Representing the Plaintiff.

Tamika R. Nordstrom, Esquire
LAW OFFICES OF MILLER & MARTIN, PLLC
1170 Peachtree Street NE - Suite 800
Atlanta, Georgia 30309;
Representing the Defendants.

DEPOSITION of RICHARD JAMES GOULART, a witness of lawful age, taken on behalf of the Plaintiff in the above-entitled cause wherein Azell Malone is the Plaintiff and Lockheed Martin Corporation et al are the Defendants, pending before the United States District

* * * * * *

Parisi Court Reporting
270 Hixville Road
North Dartmouth, Massachusetts 02747
(508) 984-5502

Q So you, Dan, Keith, and Carl?
A Well, let me get this right.
Q That's okay. Take your time. I'm not trying to trick you.
A I went over last week. It was just me to stop by. And I was informed about the case. And then Keith and I went over there -- that's why I was looking -- I believe it was a couple of days ago.
Q He can't answer.
A Oh. I'm sorry.
Q You -- you gotta pretend he's not here.
A And I was told last week. And then where Keith and I was yesterday. We went over; and they informed us in detail, the lawyer.

MS. NORDSTROM: You can't talk about anything we talked about.

THE WITNESS: Right.

MR. DRYWA: Well, actually, you can.

A Well, I was informed about the case.
Q Okay. Who informed -- what I was interested in is who talked to you about your deposition today, about what you may or may not say today.
A Yesterday --
Q Yes.

A -- was just from the lawyer about this case.

MS. NORDSTROM: I'm his attorney; and I object to any questions that are listed as attorney/client information.

Q Did you hire Ms. Nordstrom as your attorney?

A No.

Q So you don't have an attorney representing you today?

MS. NORDSTROM: I am representing him today. And I have represented that to you as well. That's why he's appearing without Subpoena today.

MR. DRYWA: Let's go off the record.

(Discussion off the record)

MR. DRYWA: Let's go back on the record.

Q When did you first meet with Ms. Nordstrom?

A Yesterday at the end of work.

Q Okay. And where did you meet her?

A In Middletown. Lockheed office, Main Road.

Q Okay.

A East Main. East Main Road.

Q Okay. And at whose request did you meet her?

MS. NORDSTROM: I'm going to object as attorney/client privilege and direct that you not

answer that question.
Q Did Ms. Nordstrom contact you directly in the request that you meet with her?
MS. NORDSTROM: I'm going to object again. Same basis.
Q Did Ms. Nordstrom tell you how you should prepare your answers for today's deposition?
MS. NORDSTROM: Object again. Same basis. I'm his counsel sitting here. You can shake your head; but --
Q Did you ever talk about this case with Mr. Supancic?
A Yes. When we were over at the office about the case coming up.
Q Did he ever tell you what he thought the case was about?
A I asked him.
Q And what did he tell you?
A What the suit was about. He said it was a -- a suit against Lockheed and against him for racism and persecution of a whistle blower. Those two things.
Q Okay.
A And that's all that was stated material.
Q And when was that?
A When I asked him last week when I was informed of

the case.
Q Okay.
A And I asked what it was about, just like --
Q Yeah. And so then did you talk about it after that?
A We ended the meeting. It was more to inform me that this questioning was coming up.
Q Oh, he told you that?
A Well, about the case that we're gonna have a date that we have to meet, which is here. I wasn't sure at the time of the exact, you know, place. It could be in Providence. Things like that.
Q Did you and he discuss the facts of the case at all?
A I'm not sure what to say on that.
Q Just answer truthfully.
A I plan -- I didn't know I was -- you know, I thought it was just come in and questions; and I answer 'em truthfully --
Q Right.
A -- and go from there. I didn't know about this representation. I don't fully understand. But I understand what she's saying. I didn't know fully.
Q Do you believe that Ms. Nordstrom represents you in

a legal capacity?

A I thought she's representing the company, Lockheed Martin. And I thought it was for Mr. Supancic and that I was just a witness coming in.

Q Are you aware that you could have had your own attorney present today?

A No, not -- no.

Q Did Mr. Supancic tell you you had a right to have an attorney with you today?

A No.

Q Did Ms. Nordstrom say that to you?

A No, sir.

Q Okay. So let's go back.

MS. NORDSTROM: Just for the record, I'd like to state that I told him I was his attorney for today. So he understood that he was represented.

THE WITNESS: Oh, I did as far as a point with Lockheed. I didn't know this -- I was being protected.

Q So let's go back to the conversation you had with Mr. Supancic. When you said you talked about the case and you said you weren't sure how to answer that, Mr. Supancic's not your lawyer, is he?

A No, sir.
Q Okay. So why don't you tell me what you and he talked about when you talked about this lawsuit. Let me ask a more pointed question.
Did he tell you what he thought about the lawsuit?
A Well, he basically -- first thing he told me was that Al had the right -- he was filing a suit, but he had the right to do it. Because, you know, he didn't say it harshly or anything. That's an individual's right, which I understood. And then he explained to me about that it was for racism and persecution of a whistle blower.
Q Right. Did he offer his opinion about what he thought about the lawsuit?
A Other than that, that was probably the major thing.
Q How long did the meeting take place for?
A Yesterday?
Q Not yesterday. Your initial meeting with Mr. --
A Initial?
Q -- Supancic.
A Forty-five minutes maybe to an hour.
Q All right. Forty-five minutes. That's a long time. So I'm interested in what you guys talked about for

A Well, I did. I explained that. You know. Because he said to me -- he never explained to me about what had happened, what -- you know, what he controlled. And that some day, he was gonna tell me; and that because they're in charge are not allowed to explain why. I'm just baffled that this whole system, that it doesn't work. That much I know. It's almost like --

Q The system at Lockheed Martin, you mean?

A Well, with this HR thing. It's almost like they take control; and they're not -- I was never even told anything.

Q You're referring to the complaints that you filed in September of 2004 --

A Right.

Q -- with Al Malone who then forwarded it on to Mr. Supancic about the allegations of harassment --

A (Witness Nodding)

Q -- about the allegations of --

A Oh, there was a lot of illegal activities going on, I mean, with our guys. There were favors being done. Tools were being bought for certain people. There was government people.

Q Yeah. We'll talk about that. I don't want to

interrupt you.
A I know.
Q But I want to stay on a train of questioning here.
A Well, that's what I'm tryna say is that's what I explained to Carl. I said, you know, the witnesses weren't spoken to. And I got put in a corner; and that's all I know.
Q Okay.
A You know. And --
Q All right.
A That's why I was sayin' I didn't believe in the system.
Q Are you afraid by coming here today and giving testimony that you may suffer some form of retaliation by Mr. Supancic?
A I'm intimidated by the whole thing. Because I don't know what to expect --
Q I understand that.
A -- from everything that's happened. I don't know what to expect.
Q Well, let me just ask you again. Do you believe that you're at risk for some form of retaliation if you come here and testify today?
A I did think that may be a possibility --

Q Okay.
A -- you know, from maybe both parties. I don't know; but I just want to tell the truth.
Q Okay.
A I didn't know it was this detailed.
Q Well, it's -- it's gonna be a little bit detailed. So I'm gonna ask you for patience. Okay?
A Oh, I made it this far.
Q All right. That a boy. So in the 45 minutes that you met with Mr. Supancic and talked about this case, did he at any point ever tell you about what he thought about Mr. Malone's allegations of racial discrimination?
A Not at that time. Yesterday, he explained it.
MS. NORDSTROM: I'll object to anything that went on yesterday. That was a meeting with me.
MR. DRYWA: Well, if he was there and he said something to him, that's not privileged.
MS. NORDSTROM: Well, as long as he can differentiate between what we talked about and what he talked about with Carl.
THE WITNESS: There was a -- from something that had happened there at work, during

gone. I've always tried. And I applied the same approach at that building. And, again, I'll state, I am the original whistle blower.

Q Yeah. We'll talk about that for sure. I want to get into that a little bit.

A I don't know all the legalities to this. This is all new to me.

MR. DRYWA: Okay. Can we go off the record for a minute, please?

(Discussion Off the Record)

MR. DRYWA: Okay. Let's go back on the record.

Q As we sit here today, do you understand that?

A I --

Q Go ahead.

A I got a picture now.

Q Okay. Do you understand the attorney/client privilege?

A If you hire someone, I thought that's what -- you know, your personal, like a doctor or --

Q And as you sit here today, do you believe that Ms. Nordstrom is your attorney?

A If I -- if I'm here for Lockheed and she says she's representing Lockheed, I -- in my mind, I thought

she was representing Carl. Because, you know, the lawsuit against him. I didn't know I was on -- I thought I was just a witness comin' in from the outside.

Q You are a witness.

A Oh, right. I mean, from the outside not attached to anyone.

Q Well, the reason I ask is because Ms. Nordstrom is going to continue to assert the privilege. And as --

MR. DRYWA: And correct me if I'm wrong, Tamika, but as you indicated, that you don't believe that he understands what the privilege means.

MS. NORDSTROM: Despite my attempts to educate him, it appears not.

MR. DRYWA: All right.

Q And that you hold the privilege, meaning it's up to you to decide whether you want to disclose the communication between your lawyer and yourself. It's not up to your lawyer. Do you understand that?

A Oh. Right.

Q Okay. So if your lawyer directs you not to answer a question put before you on the basis of

privilege --

A Right.

Q -- you -- you understand that it's up to you to decide whether to respond to the question, not up to your lawyer. You hold the privilege. Do you understand that?

A I understand that. But I thought it was if I hired a lawyer, that somebody would be directing me. I didn't know --

Q That's correct.

A -- I was being controlled. I thought I was just gonna be asked questions and answer freely.

Q I think that that is a proper understanding of your role here today.

MS. NORDSTROM: For the record, I'm not sitting here as your lawyer to control you.

THE WITNESS: Oh, I understand. I understand. I didn't know it fully.

Q Then let me just submit to you this, that if you are inclined to answer a question I put forth to you, then feel free to do so regardless of what Ms. Nordstrom may tell you. Do you understand?

A I do. I understand that.

Q Okay.

A But that's --

MS. NORDSTROM: You also understand that I may direct you not to answer. It's your choice to decide to answer --

THE WITNESS: Right.

MS. NORDSTROM: -- over my recommendation; but that I will be giving you those recommendations if he asks you questions that I believe are protected by attorney/client privilege.

MR. DRYWA: Are you okay, Mr. Goulart? I hate to put you in a situation like this; but I didn't anticipate this coming up. Are you all right?

THE WITNESS: Yeah. I'm --

MR. DRYWA: You want to take a minute and collect your thoughts?

THE WITNESS: I don't know what to think. I didn't know it was so lined up. Like I said, I thought I was just a witness coming in to answer.

MR. DRYWA: Right.

THE WITNESS: I had never got an attorney. I believed in the system. I always thought it would work. It's sad it's all come to

this.

MR. DRYWA: Yeah.

THE WITNESS: Because, you know, when you say you nip something in the bud early --

MR. DRYWA: Yeah.

THE WITNESS: -- it was never done. I don't know if I need legal representation now. I don't know.

MR. DRYWA: Well, you certainly have that option.

THE WITNESS: I'm intimidated to say anything now. I mean --

MR. DRYWA: I understand. And I'm not going to force you to do so. I'm simply -- I've asked you to come here today to provide testimony about what you may know about a lawsuit that Mr. Malone has brought against Lockheed Martin and Mr. Supancic.

MS. NORDSTROM: And I'm inviting you to ask questions about that and not about what he did to prepare for the deposition.

MR. DRYWA: But that's relevant.

MS. NORDSTROM: Well, not really. But that's what you should focus on.

C E R T I F I C A T E

I, Barbara St. Jean, CSR, RPR, commissioned in the State of Rhode Island and authorized to administer oaths and to take and certify depositions, do hereby certify that heretofore, to wit, on the 24th day of October, 2007, personally appeared before me Richard J. Goulart at the law offices of Jamison Chase, 2477 East Main Road, Portsmouth, Rhode Island, in the afore-captioned cause now pending before the United States District Court for the District of Rhode Island; that the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth; that thereupon and while said witness was under oath, the within deposition was taken down by me in shorthand at the time and place herein named and was thereafter reduced to typewriting under my supervision.

I further certify that I am not interested in the event of the action.

IN WITNESS WHEREOF, I have hereunto subscribed my hand and affixed my seal of office this 26th day of October, 2007.

____________________________

Notary Public

My commission expires April 28, 2008