UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Azell Malone,

Plaintiff,

C.A. No: 07-65-T

v.

Lockheed Martin Corporation
and Carl Supancic,

Defendants.

# DEFENDANTS' MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Azell Malone's ("Malone") claims against Defendants Lockheed Martin Corporation ("Lockheed") and Carl Supancic ("Supancic") are without merit and summary judgment should be granted as a matter of law. Malone alleges that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) ("Title VII"), the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.* ("FEPA"), the Rhode Island Civil Rights Act of 1990, R.I.G.L §42-112-1, *et seq.* ("RICRA"), and the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.* ("RIWPA"). Malone cannot sustain his burden of proof in any of these claims. Defendants respectfully request that this Court dismiss Plaintiff's claims with prejudice as a matter of law.

## II. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he moving

party must show that 'there is an absence of evidence to support' the nonmoving party's claim." *Bard v. Mark Stevens CVS, Inc.*, 378 F.Supp.2d 33, 38 (D.R.I. 2005) (quoting *Celetox Corp v. Catrett*, 477 U.S. 317, 325 (1986)). The party opposing summary judgment "cannot rest on his or her pleadings," but must set forth specific facts showing that there is a genuine issue for trial. *Bard*, 378 F.Supp.2d at 38 (citing *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988)). The party opposing summary judgment must offer the court more than "steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Co.*, 101 F.3d 218, 223 (1st Cir. 1996).

### B. Title VII Claims and FEPA Claims Should Be Dismissed As To Defendant Supancic

The general rule is that Title VII claims and claims under the Rhode Island Fair Employment Practices Act may only be brought against the party that is named in the initial charge. *Russell v. Enterprise Rent-A-Car Co. of Rhode Island*, 160 F.Supp.2d 239, 253 (D.R.I. 2001); *see also Chatman v. Gentle Dental Center*, 973 F.Supp. 228 (D. Mass. 1997). In this case, Supancic was not a named party to the initial charge of discrimination, nor was he a named party on the issued Right to Sue Letter. (Ex. A, Charge of Discrimination).

Besides this administrative procedural bar to asserting claims against Supancic, it is also clear that the majority of federal circuits have ruled that Title VII claims are only appropriately asserted against an "employer" in accordance with the plain meaning of the statute. Of the eleven circuits that have addressed the question, ten have rejected the imposition of individual liability under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2nd Cir.1995) (individual supervisors exercising control over plaintiff are not personally liable under Title VII); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3rd Cir.1996) *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) (holding that Congress did not intend

to hold individual employees liable under Title VII); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994) *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994) (no individual liability unless individual defendant meets Title VII's definition of "employer"); *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) (individual employee/supervisor who is not otherwise an employer cannot be held personally liable under Title VII); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995) (no individual liability under Title VII); *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 1997 WL 467573 (8th Cir. 1997) (supervisors may not be held individually liable under Title VII); *Miller v. Maxwell's Int'l. Inc.*, 991 F.2d 583, 588 (9th Cir.1993) *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) (holding that individuals cannot be held liable for damages under Title VII); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996) (*reaffirming Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993), court holds that Title VII "liability is appropriately borne by employers, not individual supervisors"); *Smith v. Lomax*, 45 F.3d 402, 403-404, n. 4 (11th Cir.1995) (no individual liability under Title VII); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.) *cert. denied*, 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995) (individual supervisors not personally liable under Title VII). *See also Chatman*, 973 F. Supp. at 239 (court within the First Circuit which held "The court is persuaded by the Second Circuit's reasoning that, when read in the full context of Title VII, § 2000e(b), cannot be interpreted to create individual liability on the part of individual employees of the employer entity. Therefore this court weighs in with the nearly-unanimous view of the federal circuits that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held liable under Title VII.").

Given the wealth of authority denying individual liability to supervisors under Title VII, and Malone's failure to name Supancic as a party to his charge of discrimination, Title VII and FEPA claims should rightly be dismissed as asserted against Supancic.

### C. Malone's Title VII Claims Fail

Malone's Title VII claims are barred by the applicable statute of limitations and, even if this Court considers such claims, Malone cannot establish a *prima facie* case.

#### 1. Statute of Limitations

As a general rule, Title VII requires that discrimination charges be filed with the EEOC within 180 days of the alleged unlawful employment action. However, there is one exception: in deferral states, aggrieved individuals may file EEOC charges within the earlier of three hundred (300) days or thirty (30) days after the termination of state or local proceedings. 42 U.S.C. § 2000e-5(e)(1). Rhode Island is a deferral state, and the 300-day period applies in this case. *Kassaye v. Bryant Coll.*, 999 F.2d 603, 605 n.3 (1st Cir. 1999). Alleged acts outside the 300-day period are time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred," and "[e]ach discrete discriminatory act starts a new clock for filing charges. . . within the 180- or 300-day time period after the discrete discriminatory act occurred.").

Malone filed his charge of discrimination on August 16, 2006. Therefore, any acts which he claims to have occurred prior to October 20, 2005 (300 days prior to his charge) are time barred. The latest specific allegation made by Malone was that he was subjected to coworkers making a "Driving Miss Daisy" comment in reference to his driving his subordinate, Joe Pires to

another worksite, supposedly in or about July 2005. (Malone Dep. at 113-119; Complaint at ¶ 39).[1] All other events and allegations made by Malone occurred in 2004 or early 2005.

This case is similar to *Lawton v. State Mutual Life Assurance Co.*, 101 F.3d 218, 221-22 (1st Cir. 1996), a failure to promote case where the plaintiff failed to file her charge of discrimination within 300 days of the promotions at issue. The Court held that "[s]ince all the promotions transpired prior to April 24, 1991, more than 300 days elapsed between the last of them and the date of the administrative filing. Thus, they all fell outside the applicable limitations period." *Id.* The First Circuit has strictly held litigants to this requirement, finding in one case that a plaintiff missed the 300-day administrative filing deadline by only five days, when dismissing his claims. *See Frederique-Alexandre v. Department of Natural and Environmental Resources*, 478 F.3d 433, 437 (1st Cir. 2007). Accordingly, all of Malone's allegations preceeding October 20, 2005, should be dismissed.

At the absolute latest, and at Malone's own admission, there were no acts of discrimination or retaliation occurring after December 2, 2005, when his attorney sent a letter to Lockheed requesting his personnel file. (Malone Dep. at 198, 204-205). Therefore, the only claims that would not be time barred under Title VII would be those alleged to have occurred between October 20, 2005 and December 2, 2005. Malone has made no specific allegations that fall within this time frame. As Malone has not alleged any acts occurring within the viable time period, his Title VII claim should be dismissed in its entirety.

2. Malone Cannot Establish a *Prima Facie* Case

While Malone's claims should be ruled time barred, even if this Court analyzes such claims, Malone fails to sustain his burden of proof. The order, allocation, and standards of proof

---

[1] It is highly improbable that this incident occurred in July 2005, given that Malone admittedly stopped working on the CCSL program and was not in the same building or work group with the coworkers alleged to have committed this act since November 18, 2004.

generally applicable to discrimination cases were first established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973), and clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981):

> First, plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "articulate some legitimate non-discriminatory reason for the employee's rejection" … Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Accord Ashley v. Paramount Hotel Group, Inc.*, 451 F.Supp.2d 319 (D.R.I. 2006) (citations omitted). The ultimate burden of persuasion remains with the plaintiff. *Burdine*, 450 U.S. at 256. The employer is never required to prove the "absence" of a discriminatory motive, and "it is not enough … [simply] to disbelieve the employer. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 n.4 (1993).

To establish a *prima facie* case, Malone must show: (1) he is a member of a protected class, (2) he was performing his job satisfactorily and to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) he was treated less favorably than someone outside his protected class. *Ashley*, 451 F.Supp.2d at 330. Plaintiff's claim fails because he is unable to establish the second, third, and fourth elements.

(a) Malone Was Not Performing His Job Satisfactorily or to His Employer's Legitimate Expectations.

Courts have consistently held that evidence of excessive absenteeism is sufficient to show that an employee was not performing his job to the employer's legitimate expectations in finding that a plaintiff failed to establish this element of a *prima facie* case under Title VII. *See, e.g., EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) ("Common sense

dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job."); *Schierhoff v. GlaxoSmithKline Consumer Healthcare*, 444 F.3d 961, 966 (8th Cir. 2006) ("Regular and reliable attendance is a necessary element of most jobs."); *Schmidt v. Runyon*, 20 F.Supp.2d 1246, 1249 (C.D. Ill. 1998) ("Obviously, an employee who does not come to work cannot perform the essential functions of his job.").

In early 2002, Malone began what became a pattern of unexcused and/or unplanned absences. (Supancic Dep. at 38, 65-66; Ex. B, 1/24/02 Email). On January 24, 2002, after Malone asked to take his second unplanned vacation day on the same day he planned to be absent, in the same week, Supancic sent him an email stating, in part:

> I believe it was just the other day that I asked you to give me at least a little advance notice on vacation. I know things sometimes come up that we simply can't anticipate and don't allow for any advance notice, but twice in one week seems a bit unusual. Before I go on, let me stress that I don't believe I have EVER rejected an advance request for vacation time. And in your particular case for today, I'm sure that if you had called me at the office yesterday, or even at home last evening, I would have approved your request and wished you a fine day off. . . . Sorry if it all sounds like too much lecturing, but we've had some recent spurts of suboptimal communication and teamwork that has caused me to pay a bit more attention to this sort of stuff. And since I guess I expect a bit more of the management staff, there you have it.

(Ex B, 1/24/02 Email).

Despite this reprimand, in June 2003, Malone had again requested unscheduled vacation time twice in the same week on the same day he wanted to take vacation. As a result, Supancic issued the following email:

> To repeat what I've said on a number of occasions prior, it is unacceptable to not ask for prior approval for vacation. You have made this very mistake on both Monday and Wednesday (today) of this week. As it stands, nobody has any idea of what your situation was for yesterday, which is categorically unacceptable, and

> particularly so in light of what is supposed to be example-setting management position.
>
> In violation of policy, you continue to ask for permission for vacation on the same day, and more troubling, in a manner that gives me no opportunity to discuss the ramifications. To compound matters, you have also not answered any of the calls or pages made to you by myself and others on the management team. . . . When you are asking for vacation well in advance, e-mail is fine. However, in the same-day manner you are employing it, it is simply unacceptable, and I am troubled that your judgment would not have caused you to conclude this for yourself.
>
> You did this same sort of thing in the days leading up to the final PRS submittal deadline, which caused me to raise some of these same points. Although we might not agree on the exact extent, impact resulted then, and impacts, or at least risks, are resulting now. In light of the current CCSL "issues" we are addressing with Purvis (note that we will be meeting with them at noon tomorrow and your presence **is** required), your poorly communicated/coordinated absence is ill-advised.
>
> I have called all of your numbers and pager this morning and have heard nothing back. I did so as well earlier this week. At risk of being redundant, let me reemphasize that I consider this unprofessional and unacceptable behavior on any employees part, and absolutely so on the part of a manager.

(Ex. C, 6/11/03 Email, in part).

This situation occurred again in December 2003, prompting Supancic to notify Lynda Thomson, a Lockheed Human Resources Manager, of the problems he is having with Malone's attendance. (Ex. D, 12/9/03 Email). Supancic stated, in part:

> Al Malone called in both yesterday and today telling me (not asking) that he was taking unplanned vacation days. I strongly noted yesterday that what he was doing was exactly what I had objected to a number of other times earlier this past year, and that he was to ask for vacation in advance, just like we expect all of our direct reports to do. He knew I was not happy yesterday, but when I asked if he would be here today, he had said yes. So when he called in today, I got fairly serious with him and told him it was unacceptable. He knows that Keith Cobb is on business travel in Eagan, which leave Al as my only manager over in NUWC Buildings 1258 and 1259. He also knows that we're still in the

> middle of a significant tug-of-war with Purvis about staffing and cross-training. Those are just a few reasons why I would prefer that he be here. For Al to simply not show up and call me after the fact for a vacation day is considered a performance issue.

(Ex. D, 12/9/03 Email).

In addition to these attendance issues, Malone admittedly had a problem managing his team on the CCSL contract and stated that they were "resistant to direction". (Malone Dep. at 33-34; 93-94). As a result of these issues, Malone's performance review for the latter half of 2003 stated, in part:

> Performance was spotty. Disruptive staff behavior is problematic. Status is not regularly provided on a timely and complete basis. PRS process is also lacking, as is example-setting behavior for vacation planning and authorization, as well as absences. . . . [C]ustomer criticism of team performance, employee whereabouts and level of cooperation was disappointing. Getting to the root of it and rectify negative perceptions is a priority.

(Ex. E, 6/2/03 to 12/31/03 Performance Review).

Despite Supancic's admonitions and performance review comments, Malone called in requesting to take vacation days on the same day of his request in June 2004 and August 2004. (Audiotaped voice mails). As a result, Supancic noted these performance concerns to Ms. Thomson yet again in August 2004, stating in part:

> [M]y concerns over Al's performance have deepened. . . . [H]is behavior, accountability and performance is falling well short of what it needs to be. Al is certainly not setting the example that is required of management. . . . The bottom line is that, given Newport's multiple issues in the FE management area, I need Al to step up, but he is not responding, and if anything, is stepping back in terms of performance, accountability and behavior.

(Ex. F, 8/29/04 Email). Additionally, Government employees and prime contractor, Purvis employees who were teaming with Lockheed on the CCSL project, likewise reported problems with Malone's absenteeism, stating "Malone's problem was a lot of time we would be

looking for him and he wasn't available." (Pavao Dep. at 15, 18-19; Rosario Dep. at 26-31; McCauley Dep. at 9-11, 29-30). If the majority of individuals working amongst Malone were displeased with his attendance, this is yet another basis for finding that he was not meeting his employer's legitimate expectations. *Bramble v. American Postal Workers Union*, 135 F.3d 21, 25 (1st Cir. 1998).

Further, Malone failed to report to work on October 4-7, 2004. (Supancic Dep. at 113-115; 10/6/04 & 10/7/04 Letters). Due to this repeated and serious misconduct, on October 13, 2004, Malone was given a formal written warning, which required that Malone speak with Supancic directly at least 24 hours prior to any request for vacation time. (Ex. G, 10/13/04 Memo).

Malone's performance review for 2004 likewise reflected that:

> Al did not adequately address some of the weaknesses that had been called out in his assessment from the prior year, with problems in attendance and accountability being most significant. These problems set him very much apart from his management peers for the period, and set a very poor and visible example.

(Ex. H, 2004 Performance Review). These problems led to the issuance of a formal performance improvement plan on January 7, 2005, requiring Malone to speak with Supancic and Keith Cobb (his EIC) directly for approval or notification of any absences. (Ex. I, 1/7/05 Memo).

In March 2005, Jim Higson ("Higson") took over as Manager of Malone's group, removing Malone from Supancic's direct supervision. (Supancic Dep. at 100-101; Org Charts). For clarity and continuity, Higson sent Malone an updated copy of the performance improvement plan requirements while Malone was under his supervision. (Supancic Dep. at 169; Ex. J, 8/16/05 Memo - Updated Final Warning). Even after Higson became Malone's Manager, unexcused and unplanned absences continued in direct violation of Malone's performance improvement plan requirements. (Ex. K, 4/11/05 Email; Ex. L, 7/18/05 Email).

Lockheed's Absence From Work policy states that "regular and reliable attendance on scheduled work days" is an essential function of all positions. (Absence from Work policy, p.1). When Malone was asked during his deposition what he understood he was required to do under Lockheed's attendance policy, Malone stated "I'm required to show up for work," indicating that he clearly understood Lockheed's expectations. (Malone Dep. at 41). The undisputed evidence clearly reflects that Malone was not meeting Lockheed's legitimate expectations in this regard.

(b) Malone Did Not Suffer An Adverse Employment Action

Malone asserts that he suffered an adverse employment action because his title was changed from Field Engineering Manager to Engineer-in-Charge ("EIC") to Field Engineer although his respective job duties remained essentially the same. "An adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *Meyers v. Starke*, 420 F.3d 738, 744 (8th Cir. 2005) (citation omitted). "Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case." *Id.* The undisputed facts do not support Malone's claim of an adverse employment action.

After review of all business areas by senior management in Eagan, Newport Operations went through a period of reorganization of its management level employees in 2004, beginning in April 2004. (Supancic Dep. at 51-60). The concerns that led to this reorganization were the decreasing number of employees reporting to what seemed to be an overabundance of Managers. (*Id.*). All Lockheed employees are given "Level" ratings and there were both Level 4 and Level 5 Managers prior to April 2004. (Supancic Dep. at 54, 64-65). The goal was to reclassify all Level 4 Managers as non-management employees and leave only Level 5 Managers with that particular title. (Supancic Dep. at 54, 61, 64-65). Malone was a Level 4 Manager. (*Id.*).

In April 2004, during the initial stages of this reorganization, Keith Cobb and Don Rhodes, two Caucasian Level 4 Managers, were reclassified as non-management employees and given the title of EIC. (Org. Charts). In October 2004, as a result of the continual shifting of management and staff, Keith Cobb was placed under the management of Malone who had previously been a peer level Manager. (*Id.*).

In accordance with the stated reorganization goals of eliminating Level 4 Managers, and in light of Malone's ongoing performance and attendance issues, Malone was reassigned as an Engineer-in-Charge on November 15, 2004. (Supancic Dep. at 65-71; 8/29/06 Email, p.2). Malone's job duties, pay and benefits remained the same and he remained responsible for front line management of Lockheed's CCSL team. (8/29/06 Email, p.2; see also Payroll Records). Malone admitted that "[t]here was no change with respect to responsibilities between Manager and EIC." (Malone Dep. at 20-21; Cobb Dep. at 36).

However, Malone failed to report to work for two days immediately following notification of his reclassification to EIC status. (8/29/06 Email, p. 2; Ex. M, 9/8/06 Email & attachment). Given the customer complaints, prior warnings and continued absenteeism problems, on November 18, 2004, Supancic recommended and Lockheed's Director of Lifetime Support, Janet Christopherson, approved removal of Malone as EIC of the CCSL team and transitioned him to another contract with the Trident DPS team. (*Id.*). Keith Cobb had been repositioned as the EIC on the Trident DPS team, so therefore, Malone was now reporting to Cobb. (Org Charts). Malone's title was also changed from EIC to Field Engineer, given his removal from the CCSL project management and the fact that Cobb was already acting in the EIC role for the Trident DPS team. (*Id.*).

Despite the change in title, Malone remained a Level 4 employee and had no change in his pay or benefits. (Payroll Records). In fact, Malone received a pay increase in 2007 in his reclassified position. (Malone Dep. at 211). Malone also admitted that, during his tenure with Lockheed, his job titles and duties would change depending on the contract and/or program he was assigned to work. (Malone Dep. at 11-12).

This case is similar to *Torres-Martinez v. Puerto Rico Dept. of Corrections*, 485 F.3d 19, 23 (1st Cir. 2007), in which the Court held that there was no adverse employment action when plaintiff maintained her job, a substantially similar title and her salary and benefits, even though the plaintiff argued that her new title "completely deprived her of any work duties." Malone's job reclassification and transfer to a different work group does not amount to an adverse employment action.

(c) Malone Was Not Treated Less Favorably Than Someone Outside of His Protected Class

As set forth above, there were two other Caucasian Managers who were reclassified to EIC positions during this period of reorganization at Newport operations. Malone cannot assert that he was singled out for such treatment. However, neither of these individuals failed to report to work for their EIC positions as Malone did, and therefore, they were able to maintain this classification. Malone fails to allege or establish that Caucasian Level 4 Managers were not similarly treated during this reorganization process.

3. Lockheed and Supancic Had A Legitimate Non-Discriminatory Reason for Alleged Adverse Employment Action

Even if this Court finds that Malone's title changes constitute an adverse employment action, Lockheed had a legitimate, non-discriminatory reason for removing Malone from a management position. As set forth above, Malone's continued absenteeism, violations of policy and poor performance ratings all support his transition out of a management position. Malone

has presented no direct or indirect evidence to show that these were not valid and well documented concerns of his employer.

4. Malone Cannot Establish Pretext

> When assessing a claim of pretext in an employment discrimination case, an inquiring court must focus on the motivations and perceptions of the actual decisionmaker. Statements made by those who are not involved in the decisional process normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus. In the absence of some other proof that the decisionmaker harbored a discriminatory animus, it is not enough that his perception may have been incorrect." Rather, the plaintiff must show that the decisionmaker did not believe in the accuracy of the reason given.

*Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 31 (1st Cir. 2007).

Malone was asked on several occasions whether he believed that Supancic's conduct toward him was because of his race, and Malone continuously stated that he did not believe so, specifically stating on one occasion, "[n]o, I don't know. All I know is he had a problem with me." (Malone Dep. at 32, 78-81, 135, 188). By virtue of Malone's own testimony, he precludes any finding of pretext.

Malone understood that Lockheed had policies prohibiting discrimination and harassment and understood that he had a duty to report any such claims to the company. (Malone Dep. at 190-192). Malone asserted that he would only make such a claim or report if the discrimination or harassment was "obvious." (Malone Dep. at 192). No specific allegations of race discrimination or retaliation were ever reported to Lockheed's Human Resources department by Malone with regard to Supancic. This too is evidence that not even Malone perceived racial animus was the basis for his treatment.

**D. Malone's Fair Employment Practices Act Claim Fails**

1. Statute of Limitations

To prevail under FEPA, a plaintiff must file a charge with the Rhode Island Commission for Human Rights within one (1) year from the date of the alleged discriminatory act or practice. *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 68 (1st Cir. 2004), R.I.G.L. § 28-5-17(a). Malone filed his charge on August 16, 2006. Therefore, all discriminatory acts or practices alleged to have occurred prior to August 15, 2005 are irrelevant and should not be considered as part of this claim. As set forth above, Malone admits that there were no acts of discrimination or retaliation occurring after December 2, 2005, when his attorney sent a letter to Lockheed requesting his personnel file. (Malone Dep. at 198, 204-205). Accordingly, Malone's FEPA claims fail unless he can establish that such claims occurred between August 15, 2005 and December 2, 2005. Malone has made no specific claims or allegations of incidents occurring during this time frame and his FEPA claims should be dismissed along with his Title VII claims.

2. Malone's FEPA Claims Fail As A Matter of Law

FEPA is Rhode Island's equivalent of Title VII and prohibits discrimination in employment on the basis of a persons race or color, religion, sex, sexual orientation, gender identity or expression, disability, age or country of origin. R.I.G.L. § 28-5-7. FEPA claims are also analyzed under the *McDonnell-Douglas* burden-shifting framework. *Ashley*, 451 F.Supp.2d at 319. Defendants therefore rely upon and reference its arguments as previously set forth in Section C in supporting their request that Malone's FEPA claims are without merit.

**E. Malone's Rhode Island Civil Rights Act Claim Fails**

RICRA mandates that "all persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have the same rights [and] the full and equal

benefit of all the laws. R.I.G.L. § 42-112-1. RICRA extends to all forms of discrimination in the workplace. *Ward v. City of Pawtucket Police Dep't*, 639 A.2d 1379, 1381 (R.I. 1994). "[T]he authors of the RICRA intended that statute to function as a broad civil rights law aimed at remedying injuries to the person." *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 70 (1st Cir. 2004).

These claims are also analyzed pursuant to the *McDonnell-Douglas* burden-shifting framework. *Morgan v. GTech Corp.*, 989 F.Supp. 84, 91 (D.R.I. 1997). Malone alleges no facts supporting his RICRA claim separate or apart from those he relies upon in his Title VII and FEPA claims. As such, Defendants refer to and rely upon its arguments set forth in Section C as its basis for asserting that summary judgment is appropriate as a matter of law on Malone's RICRA claim.

### F. Malone's Rhode Island Whistleblower's Protection Act Claim Fails

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States. R.I.G.L. § 28-50-3.

On September 23, 2004, while Malone was still a Field Engineering Manager working the CCSL program, Richard Goulart ("Goulart"), one of Malone's subordinates, reported to Malone that two of his other subordinates had been accepting tools as gifts from a key government employee. (Ex. N, 9/23/04 Letter). Malone, in accordance with his managerial duties, relayed Goulart's report to Supancic, who likewise forwarded it to his supervisor, Janet Christopherson and Lockheed's Human Resources department. (Malone Dep. at 46-48;

Supancic Dep. at 106-107). While accepting tools from a customer is a violation of Lockheed policies, there is no evidence that such conduct violated any laws. Reporting such conduct is not contemplated or protected by the RIWPA.

Even if this Court considers Malone's report within the protections of the RIWPA, Malone must also prove that he suffered an adverse employment action and demonstrate that there was a causal connection between the transmission of his report and the adverse employment action he allegedly suffered. *Marques v. Fitzgerald*, 99 F.3d 1, 4 (1st Cir. 1996). Malone alleges that Lockheed's adverse employment action was "removing me from the contract." (Malone Dep. at 124). As set forth in detail above in Section C, Lockheed's reclassification of Malone's title and transfer to another contract did not constitute an adverse employment action.

Malone likewise cannot establish a causal connection between his transmission of Goulart's report and his removal from the CCSL contract. Malone transmitted Goulart's report on September 23, 2004. He was not removed from the CCSL contract until November 18, 2004, and only after receiving a number of warnings about his attendance beginning in 2002 and continuing to the date of his reassignment when he failed to report to work for two consecutive days. Under such circumstances, Malone fails to establish a claim under the RIWPA.

## III. CONCLUSION

As set forth above, Malone cannot establish his claims, even when considering the facts in the light most favorable to him. Defendants respectfully requests that this Court grant its motion for summary judgment and dismiss Malone's claims with prejudice.

LOCKHEED MARTIN CORPORATION AND CARL SUPANCIC
By their Attorney,

MILLER & MARTIN PLLC

/s/ Tamika R. Nordstrom
Tamika R. Nordstrom MN#275463
1170 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-7706
Telephone: 404.962.6413
Facsimile: 404.962.6315
Email: tnordstrom@millermartin.com

and

/s/ Mark T. Reynolds
Mark T. Reynolds, Esq. #4764
REYNOLDS, DeMARCO & BOLAND LTD.
170 Westminster Street, Suite 200
Providence, Rhode Island 02903
Telephone: 401.861.5522
Facsimile: 401.331.4861
Email: mtreynolds@conversent.net

CERTIFICATION

I hereby certify that on January 7, 2008 I served a copy of the within electronically upon:

Michael F. Drywa, Jr., Esquire
michael@simsandsimsllp.com

/s/ Tamika R. Nordstrom