**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AZELL MALONE,** **Plaintiff** | : | |
| **v.** | : | **C.A. No. 07-65-T** |
| **LOCKHEED MARTIN CORPORATION and CARL SUPANCIC,** **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This action is brought by the Plaintiff, Azell "Al" Malone, seeking redress for unlawful discrimination in the terms and conditions of employment based on his race (African-American) in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2(a)(1)("Title VII"), the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq*. ("FEPA"), and the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.* ("RICRA"). In addition, the Plaintiff avers that he suffered retaliation in by his supervisor and employer in violation of the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq*. ("RIWPA"). Specifically, the Plaintiff alleges, *inter alia*, that he was a tenured African American employee with more than twenty-five (25) years of service with the Defendant Lockheed Martin; that during his employment, he had consistently received high performance appraisals and never received any disciplinary warnings for any reason; that he was repeatedly subjected to unfair treatment by his supervisor on account of his race; that after reporting unethical and illegal behavior of certain employees he was subjected to unfair discipline and removed from his position; and that he was replaced by a white person. Defendants admit that the Plaintiff is an African American, that he

was employed by Lockheed since 1983, and that he was demoted in or around October/November 2004. Defendants bring this motion against the Plaintiff seeking summary judgment in their favor on all claims. The Plaintiff objects thereto as set forth in the legal analysis that follows.

## II. FACTS

The Plaintiff, Azell "Al" Malone (hereinafter "Malone"), is an African American male who was hired by Lockheed Martin Corporation (hereinafter "LMC") in 1983, which had acquired Sperry, a company the Plaintiff had worked for since 1977. [Compl. ¶¶7-8; Pl.'s Aff. ¶2][1] Up until the time when Defendant Carl Supancic (hereinafter "Supancic") became Malone's direct supervisor in or about 2000, Malone received excellent performance reviews, was regularly promoted and given greater work responsibilities, and never suffered from any form of disciplinary action. [Compl. ¶¶12; Pl.'s Aff. ¶¶3,8] Shortly after Supancic began to supervise him, Malone began to be subjected to a pattern of harassment and unfair treatment and was targeted by Supancic as having an alleged attendance problem. [Compl. ¶¶13-14; Pl.'s Aff. ¶4]

For all the years prior to Supancic becoming Malone's supervisor, it was (and remains) common practice among LMC employees (at the facility where Malone worked) that employees could call in on a day that they desired to take as a vacation day and this would not be a problem so long as the work was being performed. [Pl.'s Aff. ¶¶5, 10; Goulart Dep. at 32-36; Cobb Dep. at 16-17][2] Despite this common practice, Malone was targeted by Supancic starting in 2002 for allegedly failing to follow an attendance policy by not giving advance notice of vacation days he took. [Def.'s Mem. Supp. Summ. J. at Exs. B, C, D] Malone never took more time than he had

---

[1] A copy of the Plaintiff's affidavit is attached hereto as Exhibit A.

[2] The relevant portions of the deposition transcripts for Richard Goulart and Keith Cobb are attached hereto as Exhibits B and C, respectively.

earned and never took time off from work unless all of his job responsibilities were covered. [Pl.'s Aff. ¶¶6, 9] In 2003, Supancic gave Malone a performance appraisal ("P.A.") which covered the first half of the year and rated Malone as a High Contributor. [June, 2003 P.A.][3] In that P.A. there was no mention of any perceived or alleged attendance issues. [Id.] Approximately six months later, Supancic gave Malone another P.A. for the second half of 2003, at which time Malone was rated as a "Successful Contributor," one level below his rating some six months prior. [See Def.'s Mem. Supp. Mot. Summ. J. at Ex. E] In that P.A. mention was made that Malone was lacking in "example-setting behavior for vacation planning and authorization, as well as absences." [Id.] Malone disagreed with some aspects of the December 2003, P.A. and noted so in the "Employee Comments" section of the P.A. [Id.]

Malone did not receive any warnings (written or verbal) regarding alleged attendance issues during 2004. However, on or about August 29, 2004, Supancic sent an email to Lynda Thomson (LMC Human Resources) expressing dismay with Malone's attendance. [Aug. 29, 2004, email][4] In that email Supancic went to great pains to demonstrate that Malone was in violation of an attendance policy and expressed doubt regarding Malone's veracity concerning a dentist's appointment. [Id.] There are a number of handwritten notations contained on the email which call into doubt the seriousness of the allegations as pressed by Supancic. [Id.] One such notation indicates, "can't continue to approve V and then hold it against him." [Id.]

In or about late September, 2004, one of Malone's direct reports, Richard Goulart, reported to Malone that two LMC employee had been receiving gifts (in the form of tools) from a government employee; Malone passed this report on to Supancic on or about September 23, 2004. [Compl. ¶16; Def.'s Mem. Supp. Summ. J. at Ex. N] Malone subsequently reported

---

[3] A copy of Mr. Malone's first-half 2003 Performance Appraisal is attached hereto as Exhibit D.

information concerning the possible theft and sale of scrap metal by a government employee which was used to purchase the tools in question. [Compl. ¶¶17, 18; Oct. 1, 2004 email][5] Within days of reporting the information to Supancic, Malone began to suffer retaliation by LMC and Supancic. [Compl. ¶20; Pl.'s Aff. ¶¶20-22] In fact, Malone was informed that the reasons that his employees were in violation of the company's ethics rules was because of his inadequate supervision [Oct. 18, 2004 Memo][6] This memorandum was forwarded to Supancic by Sean Thompson and, in the email to which it was attached, indicated that,

> you should explain to him that you planned on doing that irregardless [sic] of the outcome of the investigation due to his personal attendance and pervious [sic] conversations you had with him (it was just held up by Legal for review) and it was separate from the investigation.

[Oct. 17, 2004 email][7] Malone responded indicating his disagreement with its contents. [Oct 20, 2004 Ltr.][8]

In a matter of a few weeks, Malone was removed from his position as Engineering Manager and was demoted initially Engineer in Charge ("EIC") and then, several days thereafter, was demoted again to Staff Engineer. [Compl. 32-35; Pl.'s Aff. 20-21] This was done under the guise of a re-organization. [Pl.'s Aff. ¶22] Although Malone was informed that he could re-apply for his prior position as EIC, he was not given an interview and another white employee was placed into that position over him. [Compl. 35; Pl.'s Aff. ¶22] The next P.A. Malone received from Supancic alleged a further deterioration in his performance, rating him as a "Basic

---

[4] A copy of the August 29, 2004 email from Supancic to Ms. Thomson is attached hereto as Exhibit E.

[5] A copy of an October 1, 2004, email from Malone to Mary Markov is attached hereto as Exhibit F.

[6] A copy of a Memorandum from Supancic to Malone dated October 18, 2004, which purports to blame Malone for the actions of his employees is attached hereto as Exhibit G.

[7] A copy of the October 17, 2004, email from Sean Thompson to Supancic is attached hereto as Exhibit H. Mr. Goulart had indicated that the two LMC employees reported for unethical behavior had actively secreted their actions from Mr. Malone. [Goulart Dep. at 54-55]

[8] A copy of a letter from Mr. Malone to Sean Thompson responding to the allegations that he was to blame for the improper acceptance of tools by his employees is attached hereto as Exhibit I.

Contributor," two levels below where he had been rated only a year and a half earlier. [See Def.'s Mem. Supp. Mot. Summ J. at Ex. H] In the December 2003, P.A., Supancic noted that there remained attendance and accountability issues. [Id.] Even after Malone was removed from Supancic's supervision, Supancic sent numerous lengthy emails to LMC Human Resources in 2005 continuing to assert that Malone was an attendance problem. In response to one of these emails, LMC Human Resources responded to Supancic that,

> All of Al Malone's absences were approved by his manager and were not contested at the time of his request. However, the doctor' notes were provided to management after he returned from his absences and not at the same day they occurred.

[July 29, 2005 email][9] Once again, LMC Human Resources failed to see the egregiousness of Malone's behavior. [Id.]

## III. ISSUES

1. Whether Malone's Title VII and FEPA claims should be dismissed as to Defendant Supancic.

2. Whether Malone's Title VII and FEPA claims should be dismissed pursuant to the applicable statue of limitations.

3. Whether Malone's Title VII, FEPA, and RICRA claims should be dismissed for failure to establish a *prima facie* case.

4. Whether Malone's RIWPA claims should be dismissed for failure to establish an adverse employment action.

## IV. POINTS AND AUTHORITIES

### A. Standard of Review in Considering a Motion for Summary Judgment

Summary judgment is appropriate *only when* "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a*

*matter of law*." *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996)(emphasis added); *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991); Fed. R. Civ. P. 56. In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 534 (1st Cir. 1996); *National Credit Union Admin. Bd. v. Regine*, 795 F.Supp. 39, 62 (D.R.I. 1992). "At the summary judgment stage, a Court should ask itself whether the plaintiff could prevail if a jury or judge believed plaintiff's version of the facts and disbelieved the Defendants' version." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 929 (1st Cir. 1983). It is not the reviewing judge's function to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 249 (1986). Accordingly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, the evidence is such that a reasonable jury could return a verdict for the non-moving party when construing all evidence in the record and inferences in favor of that party. *Id.* at 248.

## B. Argument

### I. THE COURT SHOULD DENY DEFENDANT SUPANCIC'S MOTION FOR SUMMARY JUDGMENT BECAUSE HE IS SUBJECT TO INDIVIDUAL LIABILITY FOR HIS ACTIONS

Defendants first argue that Supancic was not named in Malone's initial charge of discrimination filed with the EEOC, warranting dismissal as to him on the Title VII and FEPA claims. [Def.'s Mem. Supp. Summ. J. at 2] However, Defendants provide only a portion of Malone's Charge to support this averment, conspicuously omitting—and disregarding—the portion of the charge that specifically names Supancic as the perpetrator of the unlawful acts complained

[9] A copy of the July 29, 2005 email from Supancic to Sean Thompson regarding Malone's medical absences is attached hereto as Exhibit J.

of. [EEOC Charge][10] The charge indicates, among other things, that Malone "realized [he] was being targeted by Supancic because of [his] race." [Id.] It is patently disingenuous for Defendants to simply omit a portion of the Charge and then to allege that it fails to contain the omitted portion. No reasonable argument can be made that Supancic was not named in the initial charge when his name appears more than ten times and a specific allegation of his discriminatory intent is raised.[11] Therefore, Defendants' assertion that there exists an administrative bar to continuing the present action against Supancic, being wholly unsupported by the factual record, should be stricken and his motion for a summary judgment ruling on the same grounds should be denied.

Defendants next assert that Supancic, as Malone's supervisor, is not properly subject to individual liability under the Plaintiff's Title VII claims. [Def.'s Mem. Supp. Summ. J. at 2] In support of this argument, Defendants provide a string citation setting forth authority from ten federal circuit courts which have published decisions declining to impose individual liability on supervisors under Title VII. [Id. at 2-3] However, Defendants fail to provide any parallel authority from the First Circuit or, more importantly, from this Court, to substantiate their argument. Indeed, the case of *Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562 (D.R.I. 1996) stands in stark contrast to Defendants' position on this point and completely refutes their argument.

In *Iacampo*, this Court had occasion to consider whether the imposition of individual liability under Title VII on the plaintiff's supervisor was proper. *Id*. at 571. After acknowledging a disparity in answering this question from the various circuit courts, this Court held that, under Title

[10] A complete copy of the Plaintiff's Charge of Discrimination filed with the EEOC is attached hereto as Exhibit K. The form (EEOC Form 5) provides that a charging party may provide details in the "Particulars" section of the form to specify others who may have discriminated against the Complainant. In the Plaintiff's case, he attached a narrative to the Charge which set forth the numerous instances in which he alleged discriminatory action by Supancic.

[11] As this Court stated in *Russell v. Enterprise Rent-A-Car Co. of R.I.*, 160 F.Supp.2d 239 (D.R.I. 2001), "[t]he purpose for the filing requirement is two-fold. First, it operates to put the defendant on notice of the charges against [him]. Second, it gives the defendant an opportunity to participate in voluntary conciliation and avoid a subsequent lawsuit." *Id.* at 253. It is evident from the content of the Plaintiff's Charge of Discrimination that Defendant Supancic was on notice of the charges against him.

VII, "supervisory employees may be individually liable." *Id.* at 572. The Court reasoned that,

> Threatening supervisory employees with individual liability under Title VII . . . deters those who would use their positions and power to discriminate, and guarantees that victims of discrimination will receive redress not only from amorphous corporate entities, but from their very present oppressors.

*Id.* This Court reiterated the *Iacampo* holding in *Wyss v. General Dynamics Corp*., 24 F.Supp.2d 202 (D.R.I. 1998), affirming its holding that individuals may be liable under Title VII. *Id*. at 205. Defendants have totally ignored *Iacampo* and *Wyss* and simply urge this Court to adopt contrary holdings from other jurisdictions that it has explicitly rejected on two prior occasions. *Iacampo*, 929 F.Supp. at 572; *Wyss*, 24 F.Supp.2d at 205. [Def.'s Mem. Supp. Summ. J. at 4] Therefore, this Court should continue to enforce its holdings on this point and deny Defendants' Motion.

## **II. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE PLAINTIFF'S TITLE VII AND FEPA CLAIMS CONSTITUE A CONTINUING VIOLATION FOR PURPOSES OF THE APPLICABLE STATUTE OF LIMITATIONS**

Defendants further aver that Malone's Title VII and FEPA claims are barred by the applicable statute of limitations because his Charge (filed on August 16, 2006), precludes the inclusion of discriminatory events that occurred prior to October 20, 2005. [Def.'s Mem. Supp. Summ. J. at 4-5][12] A plain reading of Malone's *complete* Charge of Discrimination, however, reveals that he alleged that he was subjected to a *pattern* of discrimination that *continued* up to at least January, 2006, and continues through to the present. [EEOC Charge] The Charge sets forth a "history" of discrimination that began when Supancic became Malone's supervisor and

[12] Although Defendants confine their initial argument on the statute of limitations point to the Title VII claims, they make the same argument as to the FEPA claims at a later point in their Memorandum. In the interest of brevity the Plaintiff will treat each argument contemporaneously in this section. In addition, the Title VII, FEPA, and RICRA claims, which are all subject to the same legal analysis, are hereafter considered contemporaneously in connection with the legal arguments presented herein. *See Ashley v. Paramount Hotel Group, Inc.*, 451 F.Supp.2d 319 (D.R.I. 2006)(the R.I. FEPA statue and Title VII are analyzed under the framework established by the Supreme Court); *Horn v. Southern Union Co*., 9247 A.2d 292 (R.I. 2007)(FEPA and RICRA are *in pari materia*).

culminated with a series of poor performance appraisals, the most recent relevant P.A. given in December, 2005, resulting in Malone receiving no salary increase. [EEOC Charge] Furthermore, Malone asserts in his Charge that since December 2005, he has been repeatedly given menial tasks and subjected to close scrutiny by Supancic that other similarly situated white employees were not subjected to. [Id.] Finally, the Charge indicates,

> I believe that the December, 2005, performance appraisal and denial of a pay increase represented just one discriminatory action in a series of discriminatory actions undertaken by Supancic from October, 2004, to the present and he will continue to treat me differently than white employees until I resign or am terminated.

[Id.] The facts set forth in the EEOC Charge make out a case for the equitable tolling of the 300-day filing period under the continuing violation doctrine. The purpose of this doctrine is to allow "suit on later wrongs where a wrongdoer would otherwise be able to repeat a wrongful act indefinitely merely because the first instance of wrongdoing was not timely challenged." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 54 (1st Cir. 1999).[13]

There are two branches of this doctrine that are used to determine whether equitable tolling will apply: (1) serial violation and (2) systemic violations. *Megwinoff v. Vizcaya*, 233 F.3d 73, 74 (1st Cir. 2000). Malone avers that both forms of the continuing violation doctrine reasonably apply to the facts of the present case. In order to survive a motion for summary judgment in connection with an asserted continuing violation, Malone is required to "raise a genuine issue of disputed fact as to 1) the existence of a continuing violation – be it serial or

[13] As was noted in *Thomas*,

> Plaintiffs in these cases experience harm from each employer act (e.g., a harassing comment, a denied promotion, or a smaller paycheck), for which they could recover under Title VII . . . . The continuing violation doctrine ensures that these plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory.

*Thomas*, 183 F.3d at 54.

systemic, and 2) the continuation of the violation into the limitations period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

*a. Serial Violations*

Serial violations can be shown if the evidence demonstrates "that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *National R.R. Passenger Corp.*, 536 U.S. at 118. Serial violations comprise,

> a number of discriminatory acts emanating from the same discriminatory animus, each of which constitutes a separate wrong actionable under Title VII . . . . The series must contain a discriminatory act occurring within the limitations period for the plaintiff to reach back to include those otherwise untimely acts in [his] claim.

*Megwinoff*, 233 F.3d at 74. Malone asserts that, in connection with his performance appraisal for 2005 (given in or around December, 2005) he was unfairly evaluated. [EEOC Charge] In that evaluation he was rated as a "Basic Contributor" and disagreed with most of the evaluation, as he done with prior P.A.'s accusing him of having an attendance problem. [Dec. 2005 P.A.][14] As a consequence of this low score, Malone was not given a salary increase. Since this evaluation occurred within the limitations period there can be no question that it was timely. More importantly, the December, 2005, P.A. was the culmination of the preceding several P.A.'s where Malone's performance ratings were consistently declining under Supancic's watch based on contrived attendance issues. As this Court has stated,

> [U]nlike discrete acts such as termination from employment . . . unequal pay claims are of a continuing nature in that each time a plaintiff receives a paycheck that is lower than it should be, based on allegedly discriminatory reasons, the plaintiff is injured.

*Rathbun v. Autozone, Inc.*, 253 F.Supp.2d 226, 231 (D.R.I. 2003). Applying the rule set forth in

[14] A copy of the Plaintiff's December, 2005, Performance Appraisal is attached hereto as Exhibit L.

*Megwinoff*, Malone is allowed to effectively "reach back" to prior discriminatory acts (e.g., poor P.A.'s; denial of application; demotions; unequal application of attendance policy) to include those in the present action. *See Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir. 1998)(concluding that a continuing violation, in addition to allowing an allegation of otherwise time-barred acts, more concretely allows a plaintiff to receive damages based on and reaching back to those acts). In light of the foregoing, there remains a genuine issue of disputed fact as to the existence of a serial violation and its continuation into the limitations period." *National R.R. Passenger Corp.* 536 U.S. at 118.

*b. Systemic Violations*

Systemic violations arise from discriminatory policies. *Megwinoff*, 233 F.3d at 76; *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 869 (1st Cir. 1997). A systemic violation is typically recognized in circumstances involving a "discriminatory promotion, hiring, training, or compensation system where direct evidence, statistics, or other evidence demonstrates the discriminatory effects of that policy." *Megwinoff*, 233 F.3d at 76. Systemic violations occur where an employer's discriminatory policy "is responsible for multiple discriminatory acts that fall outside the limitations period." *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 405 (1st Cir. 2002). Systemic violations have their "roots in a discriminatory policy or practice [and] so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint." *Jensen v. Frank*, 912 F.2d 517, 523 (1st Cir. 1990).

In the present case, the policy that was applied *ab initio* by Supancic to discipline Malone for his alleged failure to comply with a purported attendance policy was discriminatory insofar as it was applied arbitrarily and unevenly to him; in fact to him alone. Indeed, the policy itself appears to have been created by Supancic, rather than a specific policy promulgated by LMC. As

noted above, it was (and still is) common practice and policy for employees to call in for a vacation day on the same day they wished to take one. Defendants have presented no evidence to the contrary. In addition, the so-called policy employed by Supancic effectively granted him unbridled discretion that allowed him to unilaterally impose restrictions and rules on Malone that no other white employee was subjected to. Moreover, it appears by any rational reading of the evidence that LMC's own Human Resources department did not see Malone's alleged attendance issues as a problem, since his vacation days were, in fact, approved by Supancic. Hence, LMC's attendance policy at the relevant time periods herein (2002-2005), by its very nature, afforded the opportunity for targeted discipline to employees who could not otherwise look to a defined policy for protection. Therefore the attendance policy, such that one may have actually exited during the relevant time periods, resulted in a discriminatory policy as it related to Malone.

This policy continued to be applied unilaterally to Malone by Supancic and LMC up until Malone was transferred to Wisconsin in or about September, 2007, where, for all intents and purposes, his attendance is no longer directly observed by Supancic. Therefore, the policy applied to Malone to target him for alleged attendance issues constitutes a systemic violation. In light of the foregoing, there remains a genuine issue of disputed fact as to the existence of a systemic violation and its continuation into the limitations period." *National R.R. Passenger Corp.* 536 U.S. at 118.

Contrary to Defendants' assertion that the present action is analogous to *Lawton v. State Mutual Life Ins. Co.*, 101 F.3d 218 (1st Cir. 1996) [Def.'s Mem. Supp. Summ. J. at 5], the case at bar is distinguishable in all salient respects. The plaintiff in *Lawton* asserted the doctrine of continuing violation in an effort to demonstrate that a series of previously-withheld promotions, all of which occurred outside the limitations period, qualified to toll the 300-day filing

requirement since she was ultimately laid-off due to a company restructuring that occurred within the limitations period. *Id*. at 220-222. The circuit court indicated that the plaintiff had confused "prunes with pomegranates," concluding that salary level discrimination is not, in and of itself, "probative of discrimination *in layoffs*." *Id*. at 221 (emphasis is original). Thereupon, the court affirmed the district court's summary judgment ruling dismissing the case. *Id*. at 223. In the present matter, unlike *Lawton*, Malone asserts that there were numerous violations that carried into the limitations period that qualified to properly apply the continuing violation doctrine. On this point, as discussed in detail above, there remains an issue of fact to be resolved by a jury.

## III. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE PLAINITIFF CAN ESTALISH A *PRIMA FACIE* CASE FOR VIOLATION OF TITLE VII, FEPA AND RICRA

Absent direct evidence of purposeful racial discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973), requires that a plaintiff establish a *prima facie* case by demonstrating that (i) he is a member of a protected class, (ii) he was performing his job such that he was meeting his employer's legitimate expectations, (iii) he suffered some form of adverse employment action, and (iv) he was treated less favorably than employees outside his protected class. *See Ashley v. Paramount Hotel Group, Inc.*, 451 F.Supp.2d 319, 330 (D.R.I. 2006). In the context of the present Motion, Defendants aver that Malone's case fails because he is unable to establish the second, third, and fourth component on the foregoing test. [Def.'s Mem. Supp. Summ. J. at 6].

*a. Was the Plaintiff Meeting Lockheed Martin's Legitimate Expectations?*

Malone asserts that his competency in his position had never been an issue with LMC prior to Supancic becoming his supervisor, nor had he experienced any issues concerning his attendance. [Pl.'s Aff. ¶¶3, 8] Defendants' sole focus on whether Malone was meeting his employer's

legitimate expectations centers around the alleged attendance issue. [Def.'s Mem. Supp. Summ. J. at 6-11] Defendants erroneously report to this Court that other courts "have consistently held that evidence of excessive absenteeism is sufficient to show that an employee was not performing his job to the employer's legitimate expectations." [Id. at 6] However, the cases to which Defendants cite for this proposition make no such holding. In *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 946 (7th Cir. 2000), of 753 days plaintiff was scheduled to work from 1991 through 1994, he missed 232 days, mostly for sick time, nearly 31% of his scheduled time. Next, in *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 964 (8th Cir. 2006), between 2000 and 2002, the plaintiff was absent for 172 days, nearly 40 percent of the time. Finally, in *Schmidt v, Runyon*, 20 F.Supp.2d 1246, 1249 (C.D.Ill. 1998), the plaintiff, despite being aware that he was not to take time off on weekends and days following holidays, took seven days off in a nine month period, four of which fell on the prohibited days. A review of these cases demonstrates that they bear no similarities to the present action. Indeed, Malone's absences do not attain the level of 30%-40% of his scheduled time. As the record in this matter demonstrates, Malone never took more days off than he had earned. [Pl.'s Aff. ¶9] These were days that were given to him as part of his compensation package and that for years could be used on short notice so long as the work was being performed. [Pl.'s Aff. ¶¶5-6]

In a further effort to assert that Malone's attendance was a "performance" issue, Defendants set forth a litany of excerpts from various memoranda and correspondence issued by Supancic to Malone regarding the alleged attendance problem. [Def.'s Mem. Supp. Summ. J. at 7-10] However, these reportings were generated by the very person that Malone asserts treated him discriminatorily by falsely creating attendance issues. Defendants present no evidence that any *other* LMC employee or managers, including LMC Human Resources, considered Malone's actions to be in violation of

an attendance policy. [Pl.'s Aff. ¶¶11-12] Hence, a question of material fact is raised in regard to whether Malone's attendance was a legitimate concern for LMC, or a contrivance by Supancic to target Malone because of his race.

Defendants next aver that Malone's alleged attendance problem was not limited solely to Supancic's observations by implying that government and Purvis employees also took exception to Malone's attendance. [Def.'s Mem. Supp. Summ. J. at 9-10] However, the representation of facts used by Defendants to support this argument is a distortion of their content as Defendants have selectively extracted a small excerpt of a single deposition, attributed it to three witnesses, and colored it to their liking. [Id.] The testimony in question was given by a government employee, Olympio Pavao, who did indeed indicate that there were a number of occasions where he would look for Malone and was unable to locate him. [Pavao Dep. at 15] However, Pavao also indicated that over the course of three or four years he only brought this to the attention of his supervisor "once, maybe twice." [Pavao Dep. at 19][15] Furthermore, Pavao stated that he never reported to Malone's supervisors that he perceived a problem with being unable to locate him. [Pavao Dep. at 20] A reasonable inference to be drawn from this fact is that if indeed Malone's attendance was a genuine problem, Pavao would have reported it repeatedly, or at least reported it to LMC personnel. In not doing so, a jury could reasonably infer that Malone's attendance was not the problem with Pavao that Defendants portray it to be.

The other witnesses listed by Defendants as sharing a sentiment that Malone's attendance was a problem refute that allegation. Sandy Rosario (government supervisor) indicated that she had no complaints about Malone's performance and that he did the work he was given to do. [Pl.'s Stmt. Disputed Facts at 5] Richard McCauley (Purvis supervisor), testified that Malone did a good

[15] It is noteworthy that Pavao was the employee who Malone had reported for stealing and selling scrap metal.

job for him and that he never complained to Supancic or anyone at LMC that Malone's attendance was a problem. [Id. at 5-6] Therefore, Defendants' brash conclusion that "the majority of individuals working amongst Malone were displeased with his attendance" [Def.'s Meme Supp. Summ J. at 10] is a contortion of the factual record and completely refuted by the forgoing evidence. Likewise, Defendants' averment that Malone's alleged attendance problems were "reported" is likewise unsupported by the record. [Def.'s Mem. Supp. Summ. J. at 9] To the contrary, the record reflects that the Plaintiff was performing his job satisfactorily according to the government (Rosario) and the contractor (McCauley) for whom he was working. Therefore, the Plaintiff can establish that he was meeting his employer's legitimate expectations.[16] At a minimum, the question of whether Malone's attendance was a problem and, therefore, whether he was meeting his employer's *legitimate* expectations requires a jury to resolve.

*b. Did the Plaintiff Suffer an Adverse Employment Action?*

Malone did indeed suffer from an adverse employment action at the hands of Defendants. Title VII contemplates "a variety of adverse employment actions, including demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43 (1st Cir. 1998). In the case at bar, Malone asserts that he was singled-out for alleged attendance problems by Supancic; that these allegations were not legitimate; that as a result of these unfounded allegations he was given poor performance appraisals; that as a result of the poor performance appraisals he suffered demotions, assignments to

[16] Legitimate is defined, in part, as "Real, valid, or genuine." Black's Law Dict. 625 (6th ed. 1991). In this case, the facts demonstrate that Malone's actual job performance was satisfactory to the entities (the government and Purvis) which assigned him work responsibilities. [Pl.'s Stmt. Disputed Facts at 5-6] Defendants have opted to simply ignore this fact and assert that the only legitimate measure of Malone's performance was his attendance. The folly of such a narrow-minded argument is self-evident.

low-skill tasks, and was ultimately denied a pay increase. All of these actions qualify as adverse employment actions. Defendants' attempt to justify Malone's various demotions and/or job title changes is supported only by the testimony of Supancic. [Def.'s Mem. Supp. Summ. J. at 11-12] Supancic's testimony is contradicted by Malone's testimony:

> Q. Now, this was during a time where there were a lot of changes in the Newport operations, I believe, where they – didn't a lot of people's titles change and they reorganized the management staff?
> A. No.
> Q. They did not?
> A. If they did, I was not aware of it.
> Q. So you were not aware of a reorganization that occurred in the Newport office in the 2004-2005 time frame?
> A. The only reorganization that I was aware of was when I was reorganized. And that's when Janet said, "Well, I think what I'm going to do is break up your job." And then after that, that's when – that's the only reorganization I knew about. Whether it affected anyone else, I don't know.

[Pl.'s Dep. at 86-87] Malone's testimony that he was the sole target for reorganization refutes Defendants' assertion on this point and creates a factual issue that must be resolved by a jury. Indeed, a jury could reasonably infer that Malone, after an ongoing campaign to railroad him out of the company for fabricated attendance problems, was removed from his job under the guise of a company reorganization, and not for any legitimate business reason. Since the only evidence in the record concerning the purpose of the reorganization is the conflicting testimony of Supancic and Malone, a jury could certainly infer that, as with the alleged attendance issues, Supancic was simply creating a new avenue to target Malone. As such, Malone can establish that he suffered from adverse employment actions, satisfying the third prong of the *prima facie* case.

*c. Was the Plaintiff Treated Less Favorably than Others Outside His Protected Class?*

Malone avers that no other white employees were subjected to the same scrutiny regarding attendance and were not required to comply with the rigid requirements placed upon him by Supancic. [Pl.'s Aff. ¶¶18-19] Malone further avers that he was removed from his EIC position

under the guise of a reorganization and, despite re-applying, was never interviewed and the position was given to a white employee. [Pl.'s Aff. ¶22] Therefore, Defendants' argument that Malone's failure to report to his EIC position warranted a further demotion [Def.'s Mem. Supp. Summ. J. at 13] is contradicted by facts in the record presented by Malone. Moreover, the person who ultimately took over Malone's position, John Lastowski, demonstrated an attendance record far more egregious than Malone's during the relevant time period. [1997-2006 Attendance Records][17] From 2002 through 2005, Malone's absences totaled 183.5 hours. [Id.] During that same period, six other employees, all white including Lastowski (225.5), exceeded that total. [Id.] In 2002, twenty-four white employees had more absences than Malone and in 2003, four white employees had more absences than Malone. [Id.] All of the white employees who missed more time from work than Malone during this time were not disciplined or demoted as Malone was. Therefore, a genuine issue of fact exists as to whether Malone was treated less favorably than others outside of his class.

*d. Can the Plaintiff Demonstrate Pretext?*

Defendants aver that their legitimate non-discriminatory reason for disciplining and/or demoting Malone was because of his alleged attendance problem; violations of policy, and poor performance. [Def.'s Mem. Supp. Summ. J. at 13] Despite Defendants assertions to the contrary, Malone has demonstrated that these reasons were not valid, or at least give rise to a question of fact as to their validity. Malone has shown the existence of a genuine issue of fact regarding whether he actually had an attendance problem; whether he violated a policy; and whether his job performance was legitimately called into question. At this stage, Malone must produce evidence that would allow a jury to find that Supancic and LMC's reasons for disciplining/demoting him were, in reality, a cover-up for racially discriminatory decisions. *Ashley*, 451 F.Supp.2d at 333. "Especially

[17] A copy of LMC's attendance records of Malone's group is attached hereto as Exhibit M.

relevant to a showing of pretext would be evidence of disparate treatment of Blacks." *Id*. (internal quotation marks omitted). As set forth above, Malone was not the greatest offender on the issue of attendance during the time period that he was repeatedly disciplined. [1997-2006 Attendance Records] The evidence demonstrates that Malone, as an African-America, was indeed treated differently than other white employees in his group and that one particular white employee, John Lastowski, who had more absences than Malone during the relevant time period, was actually given Malone's position after Malone was demoted. Such evidence is certainly sufficient to demonstrate to a jury that Defendants' stated reasons for disciplining/demoting Malone were pretextual.

## IV. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE PLAINITIFF CAN ESTABLISH THE NECESSARY ELEMENTS TO SUSTAIN AN ACTION UNDER THE RIWPA

The Rhode Island Whistleblowers' Protection Act provides in relevant part as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment . . . [b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States, unless the employee knows or has reason to know that the report is false.

R.I.G.L. §28-50-3. The RIWPA "may be construed to encompass statements made by an employee to a supervisor concerning known or suspected violations of the law." *Marques v. Fitzgerald*, 99 F.3d 1, 8 (1st Cir. 1996). The facts of the present case demonstrate that on October 1, 2004, Malone notified LMC and Supancic that Pavao had sold scrap metal and used it to buy tools for some of his direct reports. [Oct. 1, 2004, email] The theft and sale of scrap metal would certainly qualify as illegal and, if it turned out that LMC employees were complicit in the arrangement, they too were in violation of the law. Within days of this report, Malone was demoted twice. Defendants completely disregard Malone's reporting of the theft and sale of scrap

metal and argue only that the receipt of tools as gifts by his direct reports does not qualify as a violation of any law. [Def.'s Mem. Supp. Summ. J. at 17] However, the fact remains that, Malone had indeed reported suspected illegal activity when he informed Defendants that of the theft and sale of scrap metal and, immediately thereafter, suffered retaliation. Viewing these facts in the light most favorable to Malone, summary judgment should be denied on this point.

## V. CONCLUSION

**WHEREFORE,** for the foregoing reasons, the Plaintiff respectfully prays that Defendants' Motion for Summary Judgment be denied.

PLAINTIFF
By his attorneys,
SIMS & SIMS LLP

January 24, 2008

/s/ Michael F. Drywa, Jr.
Michael F. Drywa, Jr. (#5999)
53 Arlington Street
P.O. Box 7367
Brockton, MA 02303
(508) 588-6900

## CERTIFICATE OF SERVICE

I, Michael F. Drywa, Jr., hereby certify that the within Motion was served upon the below-named counsels of record via email and first class mail at the addresses listed and that same has been electronically filed and is available for viewing and downloading from the court's ECF system.

**Tamika R. Nordstrom, Esq.**
Miller & Martin PLLC
1170 Peachtree Street NE
Suite 800
Atlanta, GA 30309
tnordstrom@millermartin.com

**Mark T. Reynolds, Esq.**
REYNOLDS, DeMARCO & BOLAND, LTD.
146 Westminster Street, Suite 400
Providence, RI 02903
mtreynolds@conversent.net

/s/ Michael F. Drywa, Jr.
Michael F. Drywa, Jr., Esq. (#5999)
SIMS & SIMS LLP
53 Arlington Street
Brockton, MA 02303
508-588-6900