UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

Azell Malone,

Plaintiff,

C.A. No: 07-65-T

v.

Lockheed Martin Corporation
and Carl Supancic,

Defendants.

---

# DEFENDANTS' MEMORANDUM OF LAW SUPPORTING OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Defendants have five objections to the Report and Recommendation ("R&R") on their motion for summary judgment. The first two are based upon the Court's recommendations with regard to Plaintiff Azell Malone's ("Malone") assertion that his claims, which were admittedly filed after expiration of the applicable statutes of limitations, should survive based upon the continuing violation theory. Malone's own testimony and the Court's factual findings in the R&R assert that Malone did not suffer any alleged discrimination or retaliation since 2005. Accordingly, Malone makes no allegations against Defendant Supancic ("Supancic") or anyone else at Lockheed Martin Corp. ("Lockheed") that he considers to be discriminatory, race-based treatment.

The third objection is based upon the Court's decision not to issue a ruling on the issue of supervisor liability. If the Court finds that there is no supervisor liability for claims under the Rhode Island Civil Rights Act ("RICRA"), Defendant Supancic should be dismissed from the lawsuit entirely. As it currently stands, pursuant to the R&R, Supancic would only be dismissed

as to the two claims requiring exhaustion of administrative remedies. The fourth objection is based upon the Court's finding that there is a factual dispute regarding whether Malone violated Lockheed's attendance policies and what the policies/practices were at the time. There is ample evidence supporting Lockheed's assertion that Malone was not meeting its legitimate attendance expectations and Malone could not offer any concrete examples of individuals who were treated differently with regard to attendance expectations.

Finally, Lockheed objects to Malone being provided any whistleblower protections. Malone, in accordance with his managerial responsibilities, received a report of an alleged violation of law from his subordinate. It was his duty to report this alleged violation to his supervisor, Supancic, which he did. Supancic reported this allegation up the chain of command as well, because it was his managerial responsibility. Eventually, the report reached the appropriate corporate level for investigation. This is not the type of situation or activity the whistleblower statutes were enacted to protect. As such, this Court should find that Malone was not a whistleblower because he has not engaged in protected activity.

## II. ARGUMENT

### A. Malone's Testimony And The Court's Findings of Fact All Support a Ruling That There Was No Continuing Violation.

It is undisputed that Malone's race claims were filed after expiration of the applicable statutes of limitations. As such, his claims only survive if he can prove the existence of a continuing violation. The purpose of the continuing violation doctrine is to "[allow] a plaintiff to reach back to recover for earlier related incidents-otherwise barred by a statute of limitations-where at the time they occurred the plaintiff had no reason to know that a wrong had been committed." *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 11 (1st Cir. 2001). Malone's allegations do not fall within the framework of this doctrine. Plaintiff has believed and asserted

that he perceived himself to be wronged by these allegations since 2004, he simply failed to file a timely claim. Therefore, Malone's current claims do not even fall within the purpose and scope of the continuing violation doctrine.

Additionally, as the R&R states, "when an employee seeks redress for 'discrete acts' of discrimination or retaliation, then the continuing violation doctrine may not be invoked to allow for recovery for acts that occurred outside the filing period."[1] (R&R, p. 17; citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) and *Miller v. New Hampshire Dep't of Corr.*, 296 F.3d 18, 22 (1st Cir. 2002)). Accordingly, Malone must identify specific acts which occurred during the filing period (after August 15, 2005 for claims under RIFEPA and RICRA; and after October 20, 2005 for claims under Title VII), which in and of themselves are racially discriminatory before he may advance a continuing violation theory. Malone fails to identify any such acts and specifically testifies that the alleged discrimination and retaliation ended on December 2, 2005. Further, the events that the R&R relies upon in finding evidence of a continuing violation were not considered to be race based by Malone.

1. Malone Testified And The R&R Found That He Alleged No Acts Of Discrimination After 2005.

At the absolute latest, and at Malone's own admission, there were no acts of alleged discrimination or retaliation occurring after December 2, 2005, when his attorney sent a letter to Lockheed requesting his personnel file. (Malone Dep. at 198, 204-205). The R&R likewise stated in the Findings of Fact that "Plaintiff admitted that he has not had any complaints of discrimination or retaliation against anyone since he began working offsite in the systems engineering position in 2005 through early 2008." (R&R, p. 8). These are simple, undisputed facts inconsistent with the finding of continued harassment needed for a continuing violation.

---

[1] Malone does not assert a hostile work environment claim. He limits his allegations to racially discriminatory acts committed against him. (*See* Complaint).

Malone was given several opportunities during his deposition to identify incidents that he believed constituted racially discriminatory treatment toward him. In the R&R, the Court suggested that Malone's testimony regarding the discrimination stopping was not clear and constituted an issue of fact. (R&R, p. 15). However, the R&R then quotes from Malone's deposition testimony section where Malone was asked directly "So after December of 2005, you believed the harassment stopped?" Malone's response was "I said I believed the harassment stopped. As far as I know, there was no direct intervention of anything negative on my behalf by Carl." (R&R, p. 15; Malone Dep. at 205). Unless the Court is implying that there was actionable discriminatory conduct committed by Supancic that Malone is unaware of, this testimony appears clear and undisputed that it is Malone's belief that the discrimination stopped.

2. Additional Incidents Alleged In R&R Also Occurred Outside Filing Period.

In his Memorandum Objecting to Defendants' Motion for Summary Judgment, Plaintiff only identified one act that he alleged to be discriminatory within the limitations period. This one allegedly discriminatory act was that on December 15, 2005, Plaintiff's manager, James Higson, gave him a performance review which rated his performance as a "Basic Contributor". *See Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 7 (1st Cir.2005) (where serial continuing violations are alleged, "the act that falls within the limitations period must itself constitute an actionable violation"). A subsequent manager, who is not alleged to have participated in any of the allegedly discriminatory conduct barred by the statute of limitations, who gives Malone a less than average rating on his performance review in and of itself, is insufficient discriminatory conduct to relate back to allegations of retaliation and discrimination Plaintiff now alleges. In the R&R, the Court considers the fact that Supancic allegedly

influenced the 2005 performance review,[2] which Supancic denies, but even if accepted as true, this exertion of influence is insufficient discriminatory conduct to relate back to Malone's prior claims.

In the R&R, the Court adds several other events not identified by Malone as evidencing continued discrimination: (1) an April 11, 2005 email sent to Human Resources by Supancic regarding Malone's attendance problems; (2) a July 18, 2005 email to Human Resources from Supancic also regarding Malone's attendance problems; and (3) a July 29, 2005 email to Human Resources from Supancic regarding Malone's attendance problems. (R&R, p. 19). None of these incidents occurred within the filing period and neither Malone nor the R&R can identify any specific allegations of discrimination which did. The mere fact that Supancic continued to be the Site Manager at the facility after 2005, without more, is simply insufficient to conclude that there is evidence that Supancic may have discriminated against Malone in some unidentified way.

Malone cannot and has not provided sufficient evidence to support the application of the continuing violation doctrine. All evidence supports a finding that Malone alleged no actual or perceived discriminatory conduct after December 2005. As such, his race claims should be dismissed as time barred.

**B. <u>A Ruling On the Supervisor Liability Issue Is Required.</u>**

In recommending that Counts I and II of Malone's Complaint be dismissed as to Defendant Supancic for failure to exhaust administrative remedies, the R&R states that "it is unnecessary to address Defendants' alternate supervisory liability argument." (R& R, p. 14). However, Count III of Malone's Complaint asserts claims pursuant to the RICRA, which is not subject to dismissal for failure to exhaust administrative remedies because there is no

[2] James Higson is deceased and there is no evidence other than Malone's testimony that supports this allegation.

administrative filing requirement for claims under the RICRA. If the Court finds that there is no individual supervisor liability under the RICRA, Supancic should be dismissed from the lawsuit as a party with regard to all existing claims.

As set forth in Defendant's Memorandum of Law Supporting the Motion for Summary Judgment, the majority of federal circuits have ruled that Title VII claims[3] are only appropriately asserted against an "employer" in accordance with the plain meaning of the statute. Of the eleven circuits that have addressed the question, ten have rejected the imposition of individual liability under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2nd Cir.1995) (individual supervisors exercising control over plaintiff are not personally liable under Title VII); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3rd Cir.1996) *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) (holding that Congress did not intend to hold individual employees liable under Title VII); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.1994) *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994) (no individual liability unless individual defendant meets Title VII's definition of "employer"); *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) (individual employee/supervisor who is not otherwise an employer cannot be held personally liable under Title VII); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995) (no individual liability under Title VII); *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 1997 WL 467573 (8th Cir. 1997) (supervisors may not be held individually liable under Title VII); *Miller v. Maxwell's Int'l. Inc.*, 991 F.2d 583, 588 (9th Cir.1993) *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) (holding that individuals cannot be held liable for damages under Title VII); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir.1996) (*reaffirming Sauers v. Salt Lake County*, 1 F.3d 1122

[3] Title VII case law is "routinely applied" to claims brought pursuant to the RICRA. *See Kriegel v. State of R.I.*, 266 F.Supp.2d 288, 296 (D.R.I. 2003).

(10th Cir.1993), court holds that Title VII "liability is appropriately borne by employers, not individual supervisors"); *Smith v. Lomax*, 45 F.3d 402, 403-404, n. 4 (11th Cir.1995) (no individual liability under Title VII); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.) *cert. denied*, 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995) (individual supervisors not personally liable under Title VII). *See also Chatman v. Gentle Dental Center*, 973 F.Supp. 228, 239 (D. Mass. 1997) (court within the First Circuit which held "The court is persuaded by the Second Circuit's reasoning that, when read in the full context of Title VII, § 2000e(b), cannot be interpreted to create individual liability on the part of individual employees of the employer entity. Therefore this court weighs in with the nearly-unanimous view of the federal circuits that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held liable under Title VII.").

Malone correctly notes that there are two federal cases within the District of Rhode Island that have held that supervisors may be held individually liable for allegations of discrimination. *See Iacampo v. Hasbro, Inc.*, 929 F.Supp.562, 572 (D.R.I. 1996) and *Wyss v. General Dynamics Corp.*, 24 F.Supp.2d 202, 205 (D.R.I. 1998). However, in both the *Iacampo* and *Wyss* decisions, the Court issued its ruling based on its agreement with the dissent in *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir. 1995). As previously stated, other courts within the 1st Circuit have patently disagreed with this analysis as have most other jurisdictions. The issue is ripe for this Court's determination and a favorable ruling on this issue is crucial to Defendant Supancic being dismissed as a party from this litigation. Defendants respectfully request that this Court consider the issue of supervisor liability as it pertains to claims asserted under the RICRA and find that a supervisor is not an "employer" worthy of being held individually liable for allegations of discrimination.

## C. There Is Ample Evidence Supporting Lockheed's Attendance Expectations and Malone's Failure to Meet Expectations.

To establish a *prima facie* case of race discrimination, Malone must show that he was performing his job satisfactorily and to his employer's legitimate expectations. *Ashley v. Paramount Hotel Group, Inc.*, 451 F.Supp.2d 319, 330 (D.R.I. 2006).

Courts have consistently held that evidence of excessive absenteeism is sufficient to show that an employee was not performing his job to the employer's legitimate expectations in finding that a plaintiff failed to establish this element of a *prima facie* case under Title VII. *See, e.g., EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job."); *Schierhoff v. GlaxoSmithKline Consumer Healthcare*, 444 F.3d 961, 966 (8th Cir. 2006) ("Regular and reliable attendance is a necessary element of most jobs."); *Schmidt v. Runyon*, 20 F.Supp.2d 1246, 1249 (C.D. Ill. 1998) ("Obviously, an employee who does not come to work cannot perform the essential functions of his job.").

Defendants devoted four pages of their Memorandum of Law Supporting the Motion for Summary Judgment outlining the many admonitions and written discipline Malone received from 2002-2005, primarily because of his inclination to call into work on the day he wanted to be absent and ask for a vacation day. (*See* Defs' Memo. Of Law Supporting Motion for S.J., p. 7-11). The R&R states that factual issues remain as to whether Malone actually had an attendance problem and that "Defendants have not established what those legitimate expectations were at the time." (R&R, p. 21, 23). These purported factual issues found in the R&R amount to two things (1) Supancic was the named author on most of the disciplinary letters regarding the attendance problem and (2) Malone testified that it was common practice to allow employees to

request a vacation day on the same day they sought to take one. (R&R, p. 22-23). Neither of these assertions are sufficient to create a fact issue regarding whether Malone was meeting legitimate expectations.

Supancic was Malone's direct supervisor until March 2005 and Site Manager of the entire facility. The R&R correctly notes that "Supancic took issue with Plaintiff taking unplanned vacation days with little notice or on short notice and found it to be unprofessional and unacceptable behavior for a manager." (R&R, p. 21). Supancic was not alone in these concerns or in the drafting of the disciplinary letters and warnings received by Malone. Such discipline was provided only upon approval from Lockheed's Human Resources department. This alone reflects that Malone was not meeting his employer's attendance expectations. No one alleges that such an expectation is not a legitimate one. The fact that the discipline was transmitted by Supancic pursuant to the guidance and direction of Lockheed's Human Resources department, is insufficient to find that the expectations were not legitimate and/or were based on race.

This is particularly true given the fact that Malone fails to identify any other managerial employees outside his protected class who were permitted to constantly call in and request a vacation day on the day they wanted to take off, who were treated differently. To the contrary, Keith Cobb, the only other managerial employee who was deposed, testified that he had never called in on the day he wanted to take off to request the day off and that employees who were constant offenders of this kind of conduct would receive verbal and/or written disciplinary warnings, just as Malone received.[4] (Cobb. Dep. at 15-18) (attached hereto as Ex. A). Notwithstanding, the ultimate burden of persuasion remains with the plaintiff. *Texas Dep't of*

---

[4] Note that Keith Cobb was asked about calling in "sick" in his deposition rather than calling in for vacation time, which constitute Malone's attendance violations. However, the practice regarding calling in on the day the employee seeks to be absent is consistent under both circumstances.

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The employer is never required to prove the "absence" of a discriminatory motive, and "it is not enough … [simply] to disbelieve the employer. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 n.4 (1993). In this instance, the R&R puts the burden on the Defendants to show that the policy and/or practice was not applied to Malone in a discriminatory manner, rather than placing the burden where it rightly lies, on Malone.

Malone fails to identify any other individuals with a similar three year history of being continuously counseled and warned regarding the improper practice of taking vacation the same day he requests it. While Malone may disagree with the concern and the policy, it was a legitimate one. "Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 537 (1st Cir. 1996).

**D. Malone Is Not Entitled To Whistleblower Protections**

In accordance with his managerial responsibilities, Malone received a report of alleged illegal activity from his subordinate, Richard Goulart. In accordance with his duties, Malone passed this report up his supervisory chain to Supancic. Supancic similarly passed the report up his supervisory chain until the issue reached the appropriate corporate level for investigation. While Malone alleging that he is a whistleblower and entitled to whistleblower protections is an anomaly under the circumstances and there is very little case law on this issue, courts that have addressed the issue have found that this is not the type of situation or activity the whistleblower statutes were enacted to protect. The core issue is whether Malone's "report" constitutes protected activity.

In *Huffman v. Office of Personnel Management*, 263 F.3d 1341 (Fed. Cir. 2001), the

Court addresses whether an employee who has a duty to report misconduct is entitled to whistleblower protections under the Federal Whistleblower Protection Act. In *Huffman*, the Court held that such an employee is not entitled to whistleblower protection, stating "The WPA was established to protect employees who go above and beyond the call of duty and report infractions of law that are hidden." *Id.* at 1353.

> While the language of the Act is ambiguous as to whether normal duties reports are covered, the core purposes of the WPA are simply not implicated by such reporting. Extending the WPA's protections to such situations would be inconsistent with the WPA's recognition of the importance of fostering the performance of normal work obligations and subjecting employees to normal, non-retaliatory discipline.

*Id.* at 1352.

The Eighth Circuit has similarly held that an employee who makes a report of illegal conduct as a part of his/her job duties is not entitled to whistleblower protection under the Minnesota Whistleblower Act, specifically holding that "the nature of [Plaintiff's] internal complaints was to carry out her regular job duties as opposed to exposing wrongdoing." *Skare v. Extendicare Health Svcs, Inc.*, 515 F.3d 836, 841 (8th Cir. 2008). In *Skare*, the Court states that "[w]hether an employee's conduct constituted a protected report is a question of law." *Id.* at 840. In analyzing this issue, the Court further stated that:

> [Plaintiff's] job duties as nursing director and regional nurse consultant required her to ensure compliance with applicable laws and to expose unlawful behavior internally. [Plaintiff] did not become a statutory whistleblower by merely exercising her duties to report compliance problems at her facilities.

*Id.* at 841. Prior to the *Skare* ruling, a District of Minnesota court likewise found that "a report that is presented as part of an employee's job duties is not a report under the Act." *Freeman v. Ace Telephone Assoc.*, 404 F.Supp.2d 1127, 1139 ( D. Minn. 2005).

In this case, Malone did not discover the illegal activity he reported nor did he submit the

report to "blow the whistle" on the alleged wrongdoers. To the contrary, Malone merely summarized the report provided to him by Mr. Goulart and passed it to his supervisor as he was required to do in his managerial role. Malone now attempts to use his relaying of this report to assert a retaliation claim for disciplinary actions and/or other company decisions he disagrees with. The whistleblower protection acts are not intended to protect such activity.

In *Huffman*, the court reviewed the legislative history for enacting the Federal Whistleblower Act and quoted the Senate Committee comments stating: "The Committee does not intend that employees who are poor performers escape sanction by manufacturing a claim of whistleblowing. . . . Nor would the bill protect employees who claim to be whistleblowers in order to avoid adverse action based on inadequate performance." *Huffman*, 263 F.3d at 1352-53 (quoting S. Rep. No. 100-413, at 15 (1988) and S. Rep. No. 95-969, at 8 (reprinted in 1978 U.S.C.C.A.N. 2723, 2730-31)).

While there is no direct authority on this issue pursuant to Rhode Island's Whistleblower Act, the authority cited above is persuasive and convincing that such Acts were not enacted to protect individuals who merely pass a report up the chain of command. These statutes were intended for individuals who risk their own job security for the advancement of the public good by disclosing violations of law. *See Huffman*, 263 F.3d at 1353. Malone is not one of those individuals. Defendants respectfully request that this Court find that Malone has not engaged in protected activity and dismiss Malone's whistleblower claim.

## III. CONCLUSION

Malone cannot establish his claims, even when considering the facts in the light most favorable to him. Defendants respectfully requests that this Court correct the findings of the R&R and grant the motion for summary judgment, dismissing Malone's claims in their entirety

with prejudice.

LOCKHEED MARTIN CORPORATION AND
CARL SUPANCIC
By their Attorney,

MILLER & MARTIN PLLC

/s/ Tamika R. Nordstrom
Tamika R. Nordstrom MN#275463
1170 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-7706
Telephone: 404.962.6413
Facsimile: 404.962.6315
Email: tnordstrom@millermartin.com

and

/s/ Mark T. Reynolds
Mark T. Reynolds, Esq. #4764
REYNOLDS, DeMARCO & BOLAND LTD.
170 Westminster Street, Suite 200
Providence, Rhode Island 02903
Telephone: 401.861.5522
Facsimile: 401.331.4861
Email: mtreynolds@conversent.net

CERTIFICATION

I hereby certify that on August 5, 2008 I served a copy of the within electronically upon:

Michael F. Drywa, Jr., Esquire
michael@simsandsimsllp.com

/s/ Tamika R. Nordstrom